Filed 4/3/13  P. v. Deanda CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

JOSE ALBERTO DEANDA,

    Defendant and Appellant.

E053911

(Super.Ct.No. SWF024615)

OPINION

APPEAL from the Superior Court of Riverside County.  Dennis A. McConaghy, Judge.  Affirmed.

Janice M. Lagerlof, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia, Lynne McGinnis and Felicity Ann Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Jose Alberto Deanda of shooting at an inhabited house (count 1—Pen. Code, § 246)[1] and found true an attached gang enhancement (§ 186.22, subd. (b)).  The trial court sentenced defendant to the mandatory, statutory term of imprisonment of 15 years to life.

On appeal, defendant contends the trial court prejudicially erred in declining to reopen the case to permit continued cross-examination of Hemet Police Officer Takaski Nishida, in declining to give defendant's proffered instruction on Officer Nishida's testimony, and in failing to give a sua sponte jury instruction on corroboration of an accomplice witness's testimony.  Defendant additionally contends the People committed prejudicial prosecutorial misconduct during their closing and rebuttal argument by vouching for Officer Nishida, defense counsel below rendered infective assistance of counsel (IAC) in failing to object to the prosecutor's purported misconduct, and in failing to request a limiting instruction on the use of the gang evidence adduced at trial.  Finally, defendant maintains the cumulative effect of the alleged errors deprived him of a fair trial and due process.  We affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

On January 31, 2008, defendant, whom Victoria Rodriguez knew as "Casper," came to her home at 7:30 to 8:00 p.m., with at least two persons whom she had never met

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

before; defendant referred to them as "Spooks" and "Happy."[2]  The monikers were suggestive of gang membership to Rodriguez.  Defendant discussed how he had gotten into a physical altercation earlier with two men over a woman; defendant was angry and upset.  Defendant and the others were talking about getting even with the individual with whom defendant had fought.  Rodriguez saw defendant with a black handgun.

Defendant asked Rodriguez to give him, Spooks, and Happy a ride; she drove them in her white Suburban to a house off of Florida Avenue.  Defendant brought the gun with him.  At some point, Rodriguez heard the men say they intended to shoot a home in retribution for the earlier fight.  They requested that Rodriguez turn off the vehicle's lights and park down the street from the home that was their intended target.

Defendant exited the vehicle with the gun; he was wearing a white vest under a black hooded sweatshirt with long sleeves.  Happy exited with him.  Rodriguez sat in the vehicle with the engine running and the lights off.  Defendant and Happy walked toward the house.

Less than five minutes later, Rodriguez heard several gunshots.  Defendant and Happy ran back to her vehicle.  Rodriguez heard defendant say something to the effect of, "I got 'em."  She immediately drove off quickly toward Florida Avenue.

Defendant took off the vest and threw it in the back of the vehicle.  He also handed the gun to someone.  Rodriguez saw several police cars pass her; a couple of them made

---

[2]  At trial, "Happy" was identified as codefendant Bryce Goldade; "Spooks" was identified as codefendant Agustin Ramirez.

U-turns, followed her, and put on their lights. One of the men asked her to put the gun in her purse; she refused.

Rodriguez pulled over; she exited the vehicle at the command of the police officers. The officers pulled the others from the vehicle. Rodriguez gave the officers permission to search her vehicle.

Rodriguez was arrested and charged with firing at an inhabited home. She entered into an agreement with the People in which she would testify truthfully in exchange for a one-year jail term and six years' probation.

Mayra, a resident of the home, testified that on January 31, 2008, she was in the bathroom when she heard multiple gunshots fired in rapid succession. She heard one of the bullets hit the front door. Mayra called 911.

Mayra's mother Carlota also resided in the home. On January 31, 2008, she was in her bedroom when she heard five or six gunshots; at least one of the shots hit the house. Carlota looked out her bedroom window and saw a person dressed all in black trying to get into the open door of a moving "big white car." Three other residents of the home, who were in the backyard at the time of the shooting, left the property to follow the vehicle.

The People played a recording of the 911 call placed by Mayra. Mayra reported someone had shot at the home four to six times and left in a white SUV towards Florida Avenue. In less than five minutes, while Mayra was still on the phone with the 911 dispatcher, she was told the police had already stopped the vehicle.

4

Around 10:00 p.m. on the date in question, Officer Ryan Hollenweger of the Hemet Police Department was responding to a call about the shooting; he saw a vehicle matching the description of the suspect vehicle on Florida Avenue. The vehicle was approximately two to three miles from the address where the shooting occurred; it was driving in the opposite direction of that address. Officer Hollenweger executed a U-turn and conducted a traffic stop.

Officer Hollenweger waited for other officers to arrive before having each of the occupants exit the vehicle separately. A young woman exited the driver's seat, defendant exited the front passenger seat, and two other men came out the back. Rodriguez gave permission to search the vehicle. It had three rows of seats; in the middle row officers found a white bulletproof vest. A loaded Ruger nine-millimeter handgun was found on the third row of seats; it had one cartridge chambered and two additional rounds in the magazine.

Hemet Police Officer Brett Riley also responded to the scene. He found six, nine-millimeter shell casings near the gate of the home. He also found a bullet hole in the screen on the front door and several bullet fragments, which had hit a car that had been parked at the residence.

Officer Nishida took gunshot residue swabs of all the occupants of the vehicle. He testified Goldade and Ramirez were admitted members of the 18th Street Gang. Based on defendant's tattoos, belt buckle, moniker, self-classification when booked, association with other gang members, and association that night with two other 18th Street Gang members, Officer Nishida opined defendant was a member of the 18th Street Gang on the

5

date of the offense. The residence where the shooting occurred was known for drug and gang activity on behalf of La Raza Corolla, a rival of the 18th Street Gang. Based on a hypothetical matching of the facts of the instant case, Officer Nishida opined the offense was committed in association with and for the benefit of the 18th Street Gang.

A senior criminalist with the Los Angeles County Coroner's Officer testified the gunshot residue samples brought to her from defendant were consistent with someone who had discharged a firearm. Tests of the samples obtained from the other three occupants of the vehicle found no gunshot residue.

## DISCUSSION

### A.    TRIAL COURT'S REFUSAL TO GIVE DEFENDANT'S PROPOSED PINPOINT INSTRUCTION.

Officer Nishida testified a search of defendant's jail cell revealed a table with graffiti etchings, indicative of the 18th Street Gang. However, on cross-examination, Officer Nishida admitted he was mistaken about whose jail cell the etchings were found in; they were actually found in Goldade's jail cell. Nonetheless, defense counsel continued to cross-examine Officer Nishida about the nature of his error. Officer Nishida then appears to have vacillated as to whether he was sure the pictures were of defendant's jail cell or another individual's jail cell. Defense counsel eventually requested a recess so Officer Nishida could review other materials in order that he might make a definitive determination as to whose jail cell the graffiti was found in. The court acceded to defense counsel's request.

6

During the recess, Officer Nishida reviewed the CD on which the photographs of the jail cell were recorded. He then testified the etchings were found in defendant's jail cell. Defense counsel then requested that someone take photographs of the respective individuals' jail cells so a dispositive determination could be made. The court agreed to order a photographer to do so.

Meanwhile, on redirect Officer Nishida testified that even assuming the etchings had been found in another individual's jail cell, it would neither change his opinion that defendant was a member of the 18th Street Gang nor that the offense was gang motivated. Later, the court encountered a potential 10-day delay in obtaining approval for the jail cells to be photographed. The court suggested they have the jury visit the jail cells. Defense counsel suggested, "[m]aybe we can arrive at a stipulation." Throughout the ordeal, the court appeared extraordinarily open and accommodating as to any proposed method of dealing with the perceived problem.

Defense counsel eventually requested a jury instruction effectively conveying it "could reasonably conclude that [Officer Nishida] either deliberately lied or acted in reckless disregard to the truth." Defendant's proposed instruction read, "You have heard evidence from [Officer] Nishida, a witness concerning the nature of gangs. If you believe [Officer] Nishida deliberately lied about some things, you may disregard all of his testimony. Also, if you believe [Officer] Nishida acted in reckless disregard of the truth of any issue involved in forming his opinion, or while offering his testimony, you may also disregard all of his testimony."

The court responded, "As far as this jury instruction goes, I sat here and listened to the evidence. And a person would have to be so jaded to say that that was—assuming for a moment that the officer was wrong—to stretch that and say reckless disregard for the truth is an absolute fabrication in and of itself. There was no reckless disregard for the truth, including the whole process of going and looking at the photographs. And for that reason I am going to reject this instruction."

It was eventually determined by the People that Officer Nishida had made a mistake; the pictures of the jail cell with the 18th Street Gang etchings did not belong to defendant; rather, they belonged to Goldade. The court suggested the new photographs of the respective jail cells, with indications as to whom they belonged, be admitted into evidence. The parties agreed.

The court indicated it would introduce a stipulation to the jury with respect to the photographs and Officer Nishida's testimony, but would not accept one that included the phrase "reckless disregard for the truth." After negotiations between the parties, the final stipulation, as presented to the jury, read as follows: "It is stipulated by the People and the defense that [Officer] Nishida was incorrect in his statement that the photographed desk with gang related etchings were located in the defendant's jail cell. It was located in [Goldade's] jail cell." "From the time the defendant was arrested until after the cell searches were conducted, the defendant did not have access to [Goldade's] cell."

"'"[A] defendant has a right to an instruction that pinpoints the theory of the defense . . . ."'" [Citation.] The court, however, 'may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or

8

potentially confusing [citation], or if it is not supported by substantial evidence [citation].'" [Citation.]" (*People v. Bivert* (2011) 52 Cal.4th 96, 120.)

Defendant's proposed instruction was unduly argumentative because it effectively told the jury the evidence indicated or tended to prove Officer Nishida lied or acted in reckless disregard of the truth. It is improper for an instruction to indicate an opinion favorable to a defendant regarding the effect of the evidence. (*People v. Hartsch* (2010) 49 Cal.4th 472, 504.) Similarly, substantial evidence failed to support the instruction because nothing in the record indicated Officer Nishida did anything other than make a mistake as to whom the jail cell belonged. Indeed, if defense counsel, during his cross-examination, had simply left matters after Officer Nishida admitted the pictures of the jail cell did not belong to defendant, he would have thoroughly and successfully impeached Officer Nishida on the matter. It was defense counsel's tactical decision to continue to press the matter until Officer Nishida decided he needed to take another look at the photographs in order to make a dispositive determination. Only then did he reverse himself again, which led to the instant issue.

Moreover, the instruction was duplicative in that it effectively covered ground already dealt with in instructions given by the court. (CALCRIM Nos. 105 [jury sole judge of credibility of witnesses]; 226 [same]; 332 [credibility of expert witness to be judged by jury by factors including its reasonability and support in the evidence].) Thus, the court acted within its discretion in declining to give defendant's proffered instruction.

B.     PROSECUTORIAL MISCONDUCT

Defendant contends the People engaged in prosecutorial misconduct by vouching for Officer Nishida in its statements during closing and rebuttal argument that Officer Nishida merely made a mistake in ascribing the pictures of the 18th Street Gang graffiti to defendant's jail cell. Defendant acknowledges his failure to object would normally forfeit the argument on appeal, but contends defense counsel's failure to object amounted to constitutionally IAC. We address the merits of the issue, to forestall the IAC claim, and find it lacking.

During the People's closing argument, the prosecutor argued: "[Officer] Nishida, he was wrong. He made a mistake. He was incorrect in his testimony, that that desk with the etchings was in that defendant's jail cell. It was actually in . . . Goldade's cell." He further claimed, "We talked about during jury selection that officers are humans. They make mistakes. He went upstairs to review those photos. Based upon what he reviewed upstairs, he felt certain that the writing on that desk came from the defendant's jail cell. He was incorrect."

Defense counsel spent the majority of his closing argument maintaining Officer Nishida's incorrect testimony regarding the derivation of the photographs of the jail cell undermined the totality of his testimony, including his conclusions that defendant was a member of that gang and that the crime was committed for a gang related purpose. In sum, the defense argued: "I'm not saying he's deliberately lying to stick it to [defendant]. I can't say that. I don't know what is in [Officer] Nishida's mind. But what I think is reasonable to infer, what I think is the truth, is that he's willing to say what he

10

needed to say to get a conviction. And he's willing to say things are true, and to say that he's certain that [they] are true, when they're not. They're not true."

In the People's rebuttal, the prosecutor argued: "[Defense counsel] wants you to think that because [Officer] Nishida made one mistake in his testimony, all of a sudden you have reasonable doubt, and that [defendant] should walk away free." The prosecutor noted that on cross-examination, Officer Nishida admitted he was wrong, but defense counsel continued to press the issue. At defense counsel's urging, Officer Nishida took a break so that he could further review the files he had with him at court. Only after that review did he conclude the pictures were of defendant's jail cell, because the CD with those pictures was labeled with defendant's name. "Based on that, based on what he reviewed, in that sense he felt certain that he was initially correct, and that was [defendant's] cell. [¶] He didn't get up here and try to stretch the truth, try to lie. In fact, he was honest."

"Improper comments by a prosecutor require reversal of a resulting conviction when those comments so infect a trial with unfairness that they create a denial of due process. [Citations.] Conduct by a prosecutor that does not reach that level nevertheless constitutes misconduct under state law, but only if it involves the use of deceptive or reprehensible methods to persuade the court or jury. [Citation.] In order to preserve such claims for appellate review, as a general matter the defendant must object below and request an admonition, if an admonition would have cured the harm caused by the misconduct. [Citation.]" (*People v. Watkins* (2012) 55 Cal.4th 999, 1031.)

11

"'A prosecutor may make "assurances regarding the apparent honesty or reliability of" a witness "based on the 'facts of [the] record and the inferences reasonably drawn therefrom.'" [Citation.] But a "prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record." [Citation.]' [Citation.]" (*People v. Redd* (2010) 48 Cal.4th 691, 740.)

As noted above, defense counsel failed to object to the allegedly offending remarks; thus, defendant forfeited the issue on appeal. Nevertheless, addressing the merits, we hold the People committed no misconduct. Here, the prosecutor, in effectively stating Officer Nishida did nothing more than make an honest mistake, simply restated the facts adduced by the evidence and inferences reasonably drawn therefrom. Officer Nishida initially testified the photographs were from defendant's jail cell. When questioned on cross-examination with regard to his report, which reflected the photographs were taken from Goldade's jail cell, Officer Nishida testified he had been mistaken; the photographs were not from defendant's jail cell.

Only after a recess taken at defense counsel's insistence, during which Officer Nishida reviewed the materials he had, did he again testify the photographs were taken of defendant's jail cell, because they were contained on a CD marked with defendant's name. Thus, the prosecutor's passing remarks were based on the record, particularly as they were virtually identical to the contents of the stipulation read to the jury. The prosecutor did not propose that everything to which Officer Nishida testified was true, but merely asked the jury not to disregard the entirely of his testimony on his one

12

admitted error. Therefore, the People used no reprehensible or deceptive methods, committed no prosecutorial misconduct, and certainly no prejudicial misconduct resulting in a deprival of defendant's right to due process.[3]

## C.    CALCRIM NO. 335:  ACCOMPLICE INSTRUCTION

Defendant contends the court committed prejudicial error in failing to sua sponte instruct the jury with CALCRIM No. 335, the accomplice witness instruction. Although we hold the court erred in failing to give the instruction, we find any error harmless because sufficient corroborating evidence was adduced at trial.

"When a jury receives substantial evidence that a witness who has implicated the defendant was an accomplice, a trial court on its own motion must instruct it on the principles regarding accomplice testimony. [Citations.]  This includes instructing the jury that an accomplice's testimony implicating the defendant must be viewed with caution and corroborated by other evidence. [Citations.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1223.)  "An accomplice is someone subject to prosecution for the charged crimes by reason of aiding and abetting or being a member of a conspiracy to commit the charged crimes. [Citations.]" (*Id*. at 1224.)

"A trial court's error in instructing on accomplice liability . . . is harmless if the record contains 'sufficient corroborating evidence.' [Citation.]  Corroborating evidence may be slight, entirely circumstantial, and entitled to little consideration when standing

---

[3] Since we have held the People committed no prosecutorial misconduct, defendant's IAC claim fails because he has failed to demonstrate any prejudice. (*People v. Vines* (2011) 51 Cal.4th 830, 875-876.)

13

alone.  [Citations.]  It need not be sufficient to establish every element of the charged offense or to establish the precise facts to which the accomplice testified.  [Citations.]  It is 'sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.'  [Citation.]"  (*People v. Valdez* (2012) 55 Cal.4th 82, 147-148, fn. omitted.)

Here, Rodriguez was clearly an accomplice because she was arrested and charged with the same substantive offense as defendant.  Moreover, she later entered a plea agreement with the People whereby she would receive a one-year jail term and six years' probation in return for her testimony.  Thus, the trial court was under a sua sponte duty to instruct the jury with CALCRIM No. 335.

Nonetheless, the People adduced sufficient corroborating evidence at trial to render the error harmless.  Carlota testified she heard five to six shots outside the home.  Rushing to the window, she saw a large white vehicle parked outside.  She saw a person, dressed all in black, get into the vehicle.  Three of the residence's other denizens went to follow the vehicle.  Mayra testified she heard several gunshots.  She called 911, informed the dispatcher the shooter fired four to six times, and that he left in a white SUV toward Florida Avenue.

Officer Hollenweger saw a white SUV on Florida Avenue traveling in a direction away from the house; he stopped it within five minutes of Mayra's 911 call.  Inside the car, he found a white bulletproof vest and a loaded nine-millimeter handgun.  Officer Riley found six, nine-millimeter shell casings near the gate of the home.  A swab of defendant's hand revealed gunpowder residue consistent with having recently shot a gun.

14

Defendant was wearing a belt emblematic of the 18th Street Gang, had gang tattoos, a gang moniker, and self-classified as an 18th Street Gang member when admitted to jail. He stated during a subsequent interview that he "tried to leave the gang." Defendant was arrested with two other known 18th Street Gang members. Thus, the corroborating evidence reaffirmed the description of the vehicle in which defendant fled; the close temporal and geographic proximity of defendant to the scene of the shooting; the bulletproof vest; the type of weapon used; defendant's gang affiliation; and the motivation for the shooting, i.e., members of a rival gang lived at the residence. Therefore, sufficient corroborating evidence was adduced such that the court's failure to instruct the jury with the accomplice instruction was harmless.

D.    IAC REGARDING DEFENSE COUNSEL'S FAILURE TO REQUEST THE COURT INSTRUCT WITH CALCRIM NO. 1403

Defendant contends defense counsel below committed constitutional IAC by failing to request the court instruct the jury with CALCRIM No. 1403, the instruction that limits how the jury may utilize evidence of gang activity.

"'The law governing defendant's claim is settled. "A criminal defendant is guaranteed the right to the assistance of counsel by both the state and federal Constitutions. [Citations.] 'Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to *effective* assistance.'" [Citations.] It is defendant's burden to demonstrate the inadequacy of trial counsel. [Citation.] [The Court has] summarized defendant's burden as follows: "'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was

15

"deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" [Citation.] [¶] Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." [Citation.] Defendant's burden is difficult to carry on direct appeal, as we have observed: "'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.'" [Citation.]' [Citation.] If the record on appeal ""'sheds no light on why counsel acted or failed to act in the manner challenged[,] unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected,'" and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation.]" (*People v. Vines*, supra, 51 Cal.4th at pp. 875-876.)

CALCRIM No. 1403, as presumably would have been given had defense counsel requested it below, provides:

16

"You may consider evidence of gang activity only for the limited purpose of deciding whether: The defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related . . . enhancement[s] . . . charged; or the defendant had a motive to commit the crime[s] charged. . . . You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that [he] has a disposition to commit crime." On request, the court must give a limiting instruction when evidence of gang activity has been admitted. However, there is no sua sponte duty to do so. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051-1052.)

Here, there is no evidence on the record as to why defense counsel failed to request the instruction; thus, defendant has failed to carry his burden on appeal. As the court in *Hernandez* itself stated with regard to this particular instruction, "'A reasonable attorney may have tactically concluded that the risk of a limiting instruction . . . outweighed the questionable benefits such instruction would provide.' [Citations.]" (*People v. Hernandez*, *supra*, 33 Cal.4th at p. 1053.) This is, at least in one view of the evidence, because it would call even greater attention and focus to the evidence of defendant's gang affiliation. Moreover, automatically assuming that any failure to request the instruction in any case in which evidence of gang activity is adduced would effectively require the court to give it sua sponte. Finally, there is simply no way the lack of the instruction prejudiced defendant. Here, overwhelming evidence established defendant's guilt. As noted *ante*, defendant was found in the vehicle described, on the specific street described, with a bulletproof vest, a gun matching the size shells found at

17

the scene, and gunshot residue on his hands.  Thus, defense counsel below did not

commit constitutionally IAC by failing to request the court instruct the jury with

CALCRIM No. 1403.[4]

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORT

MILLER_____
J.

We concur:

HOLLENHORST_____
Acting P. J.

CODRINGTON_____
J.

---

**4**  At best, we have found only two minor errors, which did not result in prejudice to appellant.  "No reasonable possibility exists that the jury would have reached a different result absent any of the acknowledged or asserted errors under the applicable federal or state standard of review.  [Citations.]"  (*People v. Houston* (2012) 54 Cal.4th 1186, 1233.)