Filed 7/18/13  P. v. McConnell CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RONNIE McCONNELL,<br><br>    Defendant and Appellant. | B243017<br><br>(Los Angeles County<br>Super. Ct. No. NA088369) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Tomson T. Ong, Judge.  Affirmed as modified.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Appellant Ronnie McConnell appeals from a judgment entered after a jury convicted him of two counts of premeditated attempted murder (Pen. Code, §§ 664/187, subd. (a))[1] and found true the allegation that he personally used and intentionally discharged a firearm that caused great bodily injury (§§ 12022.53, subd. (d), & 12022.5, subd. (a)). In a bifurcated proceeding, appellant admitted allegations that he had suffered one prior prison term (§ 667.5, subd. (b)) and a felony conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), & 1170, subds. (a)-(d)), which was also a serious felony pursuant to Penal Code section 667, subdivision (a).

The trial court sentenced appellant to a term of 75 years to life in prison. On count 1, appellant was sentenced to the base term of seven years to life doubled pursuant to the Three Strikes law, plus consecutive terms of 10 years for the firearm enhancement (§ 12022.5, subd. (a)), five years for the prior serious felony conviction (§ 667, subd. (a)(1)), and one year for the prior prison term (§ 667.5, subd. (b)). On count 2, appellant was sentenced to the base term of seven years to life doubled pursuant to the Three Strikes law, plus consecutive terms of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)), five years for the prior serious felony conviction (§ 667, subd. (a)(1)), and one year for the prior prison term (§ 667.5, subd. (b)). The court imposed a $1,000 assessment pursuant to Penal Code section 1464 and Government Code section 76000.

Appellant contends (1) the trial court erroneously admitted, over defense counsel's objection, irrelevant, inflammatory, and cumulative gang evidence; (2) the imposition of the assessment in the amount of $1,000 was unauthorized; and (3) the reference to Penal Code section 667.61 in the abstract of judgment must be stricken. We disagree with the first of these contentions but agree with the others. Accordingly, we will modify the judgment to strike the unauthorized assessment and the reference to Penal Code section 667.61, and affirm the judgment as modified.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

**FACTS**

**Prosecution Case**

On January 18, 2011, around 9:00 p.m., Donald Greene was on the north side of South Street, in the City of Long Beach. He saw his grandson Maurice Harrison, and Darrell Mitchell walking eastbound on the south side of South Street. Harrison was texting on his cell phone, while Mitchell was walking about 10 feet ahead of him. As they passed a maroon-colored Ford Taurus that was parked in front of a driveway, Greene saw the driver get out of the car holding a shotgun.

Harrison saw an individual get out of the passenger side of the Ford Taurus and heard someone say "Where you from, cuz?" which he understood to mean that he was being asked what gang he was from. He saw a light-skinned African-American male who was trying to hide his face. He immediately heard a loud boom which he recognized as a shotgun blast and ran back in the direction he had come from. He was hit in his back by a shotgun blast. He hid behind a tree. He looked back in the direction of the Ford Taurus and saw a person by the driver's side pointing a shotgun at him. Harrison heard another shotgun blast and was hit in the arm. He ran towards a fence and tried to escape. He was hit by a third blast that knocked him through the fence. He crawled away and eventually made his way to the nearest store.

Mitchell saw appellant get out of the front passenger seat of the Ford Taurus. Appellant looked Mitchell "straight" in the face. Mitchell continued on for a few steps and then heard someone ask "Where you from?" He turned around to see if Harrison was talking to someone and immediately heard a shotgun blast. Mitchell ran eastbound on South Street and saw Harrison running in the opposite direction. He turned to look back and saw appellant coming in his direction. Mitchell turned to run again and suffered a gunshot wound to his back.

Greene saw the driver of the Ford Taurus fire the shotgun and heard the blasts. He saw appellant get out of the car and chase Mitchell. He then heard two or three handgun

3

shots coming from the direction of where appellant was chasing Mitchell. Appellant returned to the Ford Taurus and Greene watched as appellant and the driver left the scene.

Harrison was treated for gunshot wounds to his back and left arm. He was struck by 15 pellets in the back and some pellets remained in his left arm. Mitchell suffered a "through-and-through" gunshot wound that was consistent with the type of wound associated with a handgun. At trial, Mitchell positively identified appellant as the individual who got out of the passenger side of the Ford Taurus. Mitchell testified that appellant "looked me straight in my face, and I'm the type of person I don't forget no face."

Long Beach Police Department Officer Jeffrey Deneen responded to the crime scene and recovered three expended shotgun casings, a shotgun wadding, and a silver cell phone.

Detective Joo Pirooz who was previously assigned to the Long Beach Police Department Gang Enforcement Unit, was the investigating officer on the case. He examined the silver cell phone found at the scene and discovered a Facebook application which contained appellant's profile picture. Using the information obtained from the cell phone he obtained a search warrant for appellant's residence and garages. A sawed-off shotgun and numerous unexpended shotgun rounds were found in one of the garages. Also recovered were a box of rifle ammunition and some .22 caliber bullets. Appellant later identified the silver cell phone as his.

Troy Ward, a criminalist with the Long Beach Police Department crime lab, testified as a firearms expert. He opined that the three shotgun casings found at the scene of the shooting were fired from the shotgun found in appellant's garage.

**Defense Case**

The defense read a stipulation concerning Dr. Graham Purcell, a board certified orthopedic surgeon, who had reviewed appellant's medical records that showed appellant dislocated the carpal bone in his right hand which required surgery on November 23, 2010. Dr. Purcell opined that a surgery of the type undergone by appellant required wires

4

to hold the wrist in place and the hand would be enclosed in a hard cast leaving only the fingertips and thumb tip exposed. The cast was removed on February 26, 2011. Dr. Purcell opined that the cast would have prevented appellant from being able to grip and hold a gun in his right hand. Dr. Purcell conceded that he had never held a handgun or pulled a handgun trigger and opined that it would not have been impossible for appellant to fire a weapon. Appellant did not testify.

## DISCUSSION

### I.    Admission of Evidence Referring to Gangs

Appellant contends he was denied a fair trial by the admission of highly inflammatory evidence—specifically, testimony from which the jury could infer that appellant was a gang member or affiliated with a gang. Appellant contends the court abused its discretion in admitting this evidence when there was no gang allegation charged.

Prior to trial, defense counsel was concerned with two areas of proposed testimony. The first involved the statement "where you from" allegedly made either by appellant or the driver of the Ford Taurus. The second concerned a statement appellant gave to the investigating officer during which accusations and denials of gang membership occurred. Defense counsel brought a motion in limine requesting that the witnesses be instructed that "no reference to gang membership by [appellant] be referred to."

The prosecutor stated that appellant's girlfriend believed appellant was a gang member and there was some documentation that he was, but it was not a gang-motivated crime and the prosecutor was not going to argue that appellant was a gang member.[2] However, the prosecutor argued, the statement "where you from" caught the attention of the victims and made them pause and turn around. The prosecutor intended to ask the victim what effect the statement had on him, and the victim's response would be that he

---

[2]    Appellant's statement to the police was not introduced into evidence at trial.

5

understood the question to mean what gang he was from. The trial court responded that the testimony was a "non-attribution" and the question and response was appropriate as it went to the victim's "state of mind that caught his attention."

During her opening statement the prosecutor described the confrontation as follows: "As the two young friends passed this car . . . . the two victims heard 'where you from?' and the victim 'what gang are you?' before they could even answer, the shooters opened fire." During trial, the prosecutor elicited only the information the trial court had ruled appropriate during the pretrial hearing on the motion. While discussing the victim in closing argument, the prosecutor stated, "The next thing he hears is 'where you from?' which infers what gang are you from."

Gang evidence is admissible in the prosecutor's case-in-chief, regardless of whether there is a criminal street gang enhancement allegation, where such evidence is relevant to establish motive, intent or some fact other than the defendant's criminal propensity, provided that the probative value of the evidence is not substantially outweighed by its prejudicial effect. (*People v. Williams* (1997) 16 Cal.4th 153, 193; generally Evid. Code, § 352.) Because the admission of evidence of a defendant's participation in a criminal street gang is potentially inflammatory and creates a risk that the jury will improperly infer the defendant is guilty because he has a criminal disposition, the trial court should carefully scrutinize such evidence before admitting it. (*People v. Williams, supra,* at p. 193.)

The trial court has great discretion in determining the admissibility of evidence, and on appeal, we find reversible error if the trial court's exercise of its discretion was arbitrary, capricious, or patently absurd resulting in a manifest miscarriage of justice. (*People v. Williams* (2009) 170 Cal.App.4th 587, 606.)

Appellant argues that the victims' attention would have been diverted had they been asked the location of the nearest liquor store or spoken to "in Icelandic" and the explanation of a gang meaning to the phrase "where you from" was unnecessary and prejudicial. We will not speculate as to how the victims would have reacted in

6

hypothetical situations. Here, Harrison's testimony that he understood he was being asked what gang he was from had probative value because it was relevant to show the effect the question "where you from" had on him. It caused him to stop texting on his cell phone and look up. Similarly, when Mitchell heard the question, he paused and turned around to look at appellant. Given the significance of the statement to the victim's state of mind, the trial court did not err in concluding that its relevance was not substantially outweighed by its prejudicial effect. (See *People v. Kipp* (2001) 26 Cal.4th 1100, 1121 [evidence is prejudicial if it uniquely tends to evoke an emotional bias against the defendant without regard to its relevance on material issues].)

We find no merit in appellant's contention that the prosecutor's remarks during argument constituted prosecutorial misconduct. A prosecutor is given wide latitude during argument to comment on the evidence, which includes reasonable inferences, or deductions to be drawn therefrom. (*People v. Sassounian* (1986) 182 Cal.App.3d 361, 396.) Moreover, the jury was instructed that "[s]tatements made by the attorneys during the trial are not evidence." We presume the jury obeyed these instructions. (See, e.g., *People v. Ledesma* (2006) 39 Cal.4th 641, 684.)

Equally unavailing is appellant's contention that the prosecutor introduced gang evidence through the investigating officer. At trial, Detective Pirooz testified that he was a "gang detective for Long Beach Police Department" but was currently assigned to the United States Marshals Service, Fugitive Task Force. To establish that Detective Pirooz was the investigating officer in the case, the prosecutor asked him if his assignment in January 2011 was with the gang enforcement unit. Detective Pirooz was not asked and did not volunteer any information about appellant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, or rivalries that might unduly influence the jury to find appellant guilty of the charged crime. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) In sum, no evidence was introduced at any time during the trial, as to appellant's gang membership.

7

Assuming arguendo evidentiary error, "the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*." (*People v. Partida* (2005) 37 Cal.4th 428, 439.) "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson*[3] test: The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error. [Citations.]" (*Id.* at p. 439.) Appellant has not persuaded us that the trial was fundamentally unfair. As discussed below, it is not reasonably probable the verdict would have been more favorable to appellant absent any alleged error.

Even under the more stringent *Chapman*[4] standard, we find no prejudicial error. The evidence against appellant was overwhelming. Mitchell testified that when appellant stepped out of the car he looked Mitchell straight in the face. Mitchell positively identified appellant in court. Greene saw appellant chase Mitchell and appellant appeared to be holding a handgun based on his body language and silhouette. Mitchell testified that as he ran from appellant he was shot in the back and suffered a wound consistent with a gunshot from a handgun. A sawed-off shotgun found in appellant's garage was determined to have fired the shotgun casings found at the scene of the crime. A cell phone found near the shotgun casings contained a Facebook application with appellant's profile picture. Appellant identified the cell phone as his.

## II. The $1,000 Assessment Pursuant to Penal Code Section 1464 and Government Code Section 76000 Must Be Stricken

Appellant contends, and the People do not dispute, that the trial court improperly imposed a $1,000 assessment, pursuant to Penal Code section 1464, and Government Code section 76000. Penal Code section 1464 and Government Code section 76000 provide for penalty assessments on fines for criminal offenses. Restitution fines and

---

[3]  *People v. Watson* (1956) 46 Cal.2d 818, 836.

[4]  *Chapman v. California* (1967) 386 U.S. 18, 24 (constitutional error must be found harmless beyond a reasonable doubt to avoid reversal).

parole revocation fines as were imposed here under Penal Code sections 1202.4 and 1202.45 are not subject to these penalty assessments. (*People v. Allen* (2001) 88 Cal.App.4th 986, 992–993.) Accordingly, the assessment imposed by the trial court pursuant to Penal Code section 1464 and Government Code section 76000 was unauthorized and must be stricken. (*People v. Allen, supra,* at p. 998.)

## III. The Reference to Penal Code Section 667.61 Must Be Stricken

Appellant argues, and the People agree that the abstract of judgment contains a clerical error which should be corrected. The abstract contains a checked box indicating appellant was sentenced pursuant to the provisions of Penal Code section 667.61.[5]

This is clearly clerical error. "The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.'" (*In re Candelario* (1970) 3 Cal.3d 702, 705.) Appellate courts may order correction of clerical errors in abstracts of judgment (*People v. Mitchell* (2001) 26 Cal.4th 181, 188), and we accordingly order the required correction in this case.

## IV. Abstract of Judgment

The $40 court security fee imposed by the trial court pursuant to Penal Code section 1465.8, subdivision (a)(1) is applicable to each count. The abstract of judgment incorrectly records the amount as $40, and must be corrected to reflect court security fees totaling $80. Likewise, the trial court was required to impose a criminal conviction assessment under Government Code section 70373, subdivision (a)(1) in the amount of $30 for each of the felonies of which appellant was convicted, for a total assessment of $60. The abstract of judgment must be amended to so reflect.

---

[5] Section 667.61 pertains to specified sex offenses subject to punishment by incarceration for life.

9

**DISPOSITION**

Upon remittitur issuance, the clerk of the Superior Court shall prepare an amended abstract of judgment to reflect: (1) the $1,000 assessment pursuant to Penal Code section 1464, and Government Code section 76000 is stricken; (2) the reference that appellant was sentenced pursuant to section 667.61 is stricken; (3) the court security fee imposed pursuant to section 1465.8, subdivision (a)(1) is modified to reflect $80 for the reasons stated herein; and (4) the criminal conviction assessment imposed pursuant to Government Code section 70373, subdivision (a)(1) is modified to reflect $60 for the reasons stated herein. The clerk shall forward the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is affirmed as modified.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

ASHMANN-GERST

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10