Filed 10/25/13  P. v. Joyner CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071202 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F07948) |
| v. | |
| SEAN JOYNER, | |
| Defendant and Appellant. | |

Around 2 a.m. on October 23, 2009, victim David Blanks was fatally shot six times in a nightclub parking lot.  The circumstances of the shooting were these:  As Blanks was leaving the nightclub, someone asked him, "[W]hat's up Blood?"  Blanks replied, "[W]hat's up 'cuz?"  "Blood" was a reference to the Blood criminal street gang and "cuz" was a reference to the rival Crip criminal street gang.  One Nicholas Newsome started "mugging" (making mean faces at) Blanks.  Newsome was an Oak Park Blood.  Someone asked Blanks where he was from, to which he responded, "29th Street," as Blanks was an affiliate of the 29th Street Crip gang.  Others, including Newsome and

1

defendant Sean Joyner, yelled out, "nigga, this is Oak Park." Defendant was also an Oak Park Blood. Blanks turned around, and someone repeatedly shot him.

The day after the shooting, defendant texted Damanique McCoy, the mother of his three-year-old son, the following: "[B]abe, please. This is real serious. I fucked up. I think it's over, babe. On God, on my son, I didn't mean to do it." She responded, "[W]hat's over?" Defendant texted, "Babe, I fucked up. But on God I didn't mean to do it." During a conversation McCoy had with a police detective, she told the detective that defendant told her, "some guy got shot at [the nightclub]," "it was an accident," and he (defendant) was there. When she asked if he was the shooter, he would not tell her and said he did not want to talk about it.[1]

Defendant and Newsome were both tried together in front of a jury for first degree murder with enhancements that at least one principal personally discharged a firearm and the murder was committed for the benefit of the Oak Park Bloods.[2]

A jury found defendant (and Newsome) guilty of second degree murder and, as to defendant, found true the murder was committed for the benefit of the Oak Park Bloods

---

[1]    McCoy had the conversation with defendant while they were both at the police station. The only reason McCoy went to the police station is because the police lied to her and told her defendant wanted to speak to her.

[2]    In closing, the People argued Newsome was the shooter and defendant was the aider and abettor, based on at least one witness identifying Newsome as the shooter. There was also evidentiary support for an argument that defendant was the shooter. According to the trial testimony of at least one witness, there was a man with an outstretched hand from which flashes emanated just before the witness heard shots being fired and that man was dark skinned (defendant was dark skinned at the time of the shooting and Newsome was light skinned). The jury specifically found not true an allegation that Newsome personally discharged the firearm.

Although Newsome appealed his conviction to this court, his appeal was ultimately dismissed.

and that at least one principal personally discharged a firearm. The trial court sentenced defendant to 40 years to life in prison.

Defendant appeals, raising five contentions dealing with the evidence, bifurcation, severance, and counsel's performance. We affirm.

DISCUSSION

I

*There Was Sufficient Evidence Of The Gang Enhancement*

Defendant contends there was insufficient evidence of the gang enhancement. He argues the record is "*complete[ly] lack[ing] of any* evidence that the shooting was gang related or gang motivated, or that [defendant's] conduct was in any way gang-related." Not so.

We begin with the words of the gang enhancement, which applies an increased term of incarceration to: "[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (Pen. Code, § 186.22, subd. (b)(1).) The facts, in the light most favorable to the judgment (which is the standard of review for a sufficiency-of-evidence argument) (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573]), provided sufficient evidentiary support for this enhancement. The victim's fiancé and the gang expert both testified the victim was a 29th Street Crip. The mother of defendant's son and the gang expert testified defendant and Newsome were both members of the rival Oak Park Bloods. The victim verbally acknowledged his gang affiliation before the shooting began when he stated, "29th Street." After this acknowledgement, and before the victim was shot, Newsome and defendant yelled out, "nigga, this is Oak Park." Based on this evidence, the jury could reasonably conclude the victim was shot because he was a rival Crip and that defendant orally proclaiming his membership in a rival street

3

gang before the shooting demonstrated that the murder was an act specifically intended to benefit the rival Oak Park Blood street gang.**3**

## II

*The Trial Court Did Not Err In Refusing To Bifurcate The Gang Enhancement Because*

*The Gang Evidence Was Relevant To Prove Motive And Make Sense Of The Shooting*

Defendant contends his due process right to a fair trial was violated when the court admitted gang evidence and failed to bifurcate the gang enhancement allegation.

We review an order denying bifurcation for abuse of discretion. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048.) The burden is on the party seeking bifurcation (here, defendant) to show a substantial danger of prejudice. (*Id*. at p. 1049.) The trial court properly concluded that the evidence of defendant's gang membership was admissible to show motive, was not unduly prejudicial, and therefore no purpose would be served by bifurcation. (*Id.* at pp. 1049-1050.) In *Hernandez*, the California Supreme Court upheld the denial of bifurcation where a gang member told a woman just before robbing her and her friend, " '[Y]ou don't know who you are dealing with,' " naming a street gang. (*Id*. at p. 1045.) The court found: "Much of the gang evidence here was relevant to the charged offense. Indeed, defendant Hernandez himself injected his gang status into the crime. He identified himself as a gang member and attempted to use that status in demanding money from the victim." (*Id*. at pp. 1050-1051.)

Here, as the trial court noted, this case presented a "classic [case of] gang retaliation." The victim verbally identified as being from 29th Street, which is an affiliate of the Crip street gang. Defendant then yelled out this was Oak Park, which was the rival Oak Park Blood street gang. Without this evidence, the shooting would have made no

---

**3** Defendant's argument that expert testimony alone cannot prove the gang enhancement is a non-starter because the gang expert did not provide all the evidence regarding the gang enhancement.

4

sense. Thus, because the evidence supporting the gang enhancement was admissible at trial to make sense of the shooting and thus would have come in anyway, an inference of prejudice was dispelled and bifurcation was not necessary. (*People v. Hernandez*, *supra*, 33 Cal.4th at pp. 1049-1050.)

## III

### *Defendant Has Forfeited His Sixth Amendment Contention*
### *By Failing To Raise It In The Trial Court*

Defendant contends police deliberately violated his Sixth Amendment right to counsel when it recorded and used statements of a police station conversation between him and McCoy, who was the mother of defendant's son. Defendant has forfeited this contention by failing to raise it in the trial court. (*People v. Viray* (2005) 134 Cal.App.4th 1186, 1208.)

## IV

### *The Trial Court Did Not Abuse Its Discretion In Denying*
### *Defendant's Motion To Sever His Trial From Newsome's*

Defendant contends the trial court erred in denying his request to sever his trial from Newsome's. As we explain, the court did not abuse its discretion in denying defendant's request.

The Legislature has expressed a preference for joint trials. (*People v. Lewis* (2008) 43 Cal.4th 415, 452.) "The court may, in its discretion, order separate trials if, among other reasons, there is an incriminating confession by one defendant that implicates a codefendant, or if the defendants will present conflicting defenses." (*Ibid*.) "We review a trial court's denial of a severance motion for abuse of discretion based on the facts as they appeared when the court ruled on the motion." (*Ibid*.)

Here, there were no conflicting defenses, as defendant's defense when the motion was argued was simply that he was not present at the shooting. Moreover, there was no incriminating confession by one defendant implicating the other. Finally, as the trial

5

court noted, the evidence in both cases was cross-admissible, including (importantly) that many of the same witnesses would have to be called in both trials. Thus, the trial court did not abuse its discretion in denying defendant's request to sever his case from Newsome's.

V

*Trial Counsel Was Not Ineffective For Failing*

*To Raise A Meritless Miranda Claim*

Defendant contends trial counsel was ineffective for failing to suppress the recording of his conversation with McCoy in which he made incriminating statements to McCoy. He argues counsel had no tactical reason for not making an argument pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694]) (*Miranda*) and that the recording violated his Fifth Amendment rights. "*Miranda* requires that a suspect be given certain advisements to preserve the privilege against self-incrimination, or to ensure its voluntary and intelligent waiver, during the inherently coercive circumstances of a 'custodial interrogation.' " (*People v. Webb* (1993) 6 Cal.4th 494, 525-526.)

Counsel was not ineffective because her performance was not deficient. (See *People v. Waidla* (2000) 22 Cal.4th 690, 718 [counsel's deficient performance is the first prong of an ineffective assistance of counsel analysis].) *Miranda* warnings do not apply even when a suspect's girlfriend, at police direction, tape records conversations in which she elicited admissions concerning the homicide. (*People v. Webb, supra*, 6 Cal.4th at pp. 524-526.) Here, the situation was even more remote than in *Webb*. McCoy did not record the conversation and elicit incriminating statements at police direction. Rather, she talked to defendant because police told her (incorrectly) that defendant said he wanted to talk with her, so she went to the police station to talk with him.

DISPOSITION

The judgment is affirmed.


      ROBIE      , J.


We concur:



     BLEASE     , Acting P. J.



     MAURO     , J.