[No. S117651. Aug. 9, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE PABLO HERNANDEZ et al., Defendants and Appellants.

**Counsel**

Susan K. Keiser, under appointment by the Supreme Court, for Defendant and Appellant Jose Pablo Hernandez.

Jill Lansing, under appointment by the Supreme Court, for Defendant and Appellant Jonathan Fuentes.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz, Lauren E. Dana and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

Steve Cooley, District Attorney (Los Angeles), Patrick Moran, Acting Head Deputy District Attorney, Brent Riggs and Phyllis C. Asayama, Deputy District Attorneys, for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**CHIN, J.**— ■ The punishment for certain crimes can be enhanced if the crime involves a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1);[1] see generally *People v. Gardeley* (1996) 14 Cal.4th 605 [59 Cal.Rptr.2d 356, 927 P.2d 713].) To establish this criminal street gang enhancement, the prosecution must prove some facts in addition to the elements of the underlying crime, for example, that the criminal street gang has engaged in a "pattern of criminal gang activity." (§ 186.22, subds. (e) and (f).) Accordingly, when the prosecution charges the criminal street gang enhancement, it will often present evidence that would be inadmissible in a trial limited to the charged offense. We have held that a trial court may bifurcate trial of a prior conviction from trial of the charged offense. (*People v. Calderon* (1994) 9 Cal.4th 69 [36 Cal.Rptr.2d 333, 885 P.2d 83] (*Calderon*).) Defendants contend the court here should similarly have bifurcated trial of the gang enhancement from trial of the charged offense. They also contend the court should at least have given a limiting instruction regarding the permissible uses the jury could make of evidence admitted solely to support the criminal street gang enhancement.

We conclude the court acted within its discretion in refusing to bifurcate trial of the gang enhancement from trial of the charged offense. We also conclude that on request, the court should give a limiting instruction regarding the jury's use of evidence supporting the criminal street gang enhancement, but because defendants did not request a limiting instruction in this case, the court did not err in failing to give one.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## I. FACTS AND PROCEDURAL HISTORY

Because no party petitioned the Court of Appeal for rehearing, we take the facts largely from that court's opinion. (See Cal. Rules of Court, rule 28(c)(2); *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 415 [9 Cal.Rptr.3d 121, 83 P.3d 518].)

### A. *The Robbery*

Around 8:00 p.m. on August 15, 2000, Blanca Rodriguez and Armen Stepanyan were sitting in a Honda parked in front of Rodriguez's home in Hawthorne. Defendants Jose Pablo Hernandez and Jonathon Fuentes approached the passenger side of the car and asked Rodriguez for a cigarette. Rodriguez handed Hernandez a cigarette, but Hernandez said, "I need another cigarette. You better give me another cigarette . . . ." When Rodriguez indicated she had no more, Hernandez demanded a dollar. He said, "[Y]ou don't know who you are dealing with," and told her that she was dealing with "Hawthorne Little Watts." Rodriguez suspected Hernandez was referring to a gang. Hernandez said if they did not get money, they were going to take the Honda. Defendants opened the passenger door and pulled Rodriguez from the car. Fuentes grabbed her by the neck, choked her, and took her necklace while Hernandez pointed a knife at her neck. Rodriguez observed Stepanyan obtain a wooden stick and challenge the attackers. She screamed, "Somebody call 911." Defendants then fled.

Stepanyan's testimony was slightly different from Rodriguez's. He recalled that Fuentes reached into the Honda and grabbed Rodriguez's necklace before they pulled her from the car.

The police detained both defendants shortly after the robbery. Hernandez ran from one second story roof to another and jumped to the ground to avoid one officer. Fuentes attempted to flee on a bicycle from another officer and later provided that officer a false name. Rodriguez identified both defendants in field showups the evening of the robbery and again at trial. Stepanyan identified Fuentes in a photographic lineup a few days after the robbery and again at trial.

### B. *Gang Evidence*

Hawthorne Police Detective Peter Goetz testified at trial as an expert on criminal street gangs. He stated that Little Watts is the largest Hispanic gang in Hawthorne, with about 275 members. He interviewed Hernandez on the street with other Little Watts gang members in March 2000. Goetz took a picture of Hernandez and his associates making gang signs. Hernandez

admitted gang membership and said his Little Watts moniker was Smiley. Goetz interviewed Fuentes on the street in 1997. Fuentes admitted membership in the 106 clique of the 18th Street gang and said his moniker was Looney. Fuentes had no tattoos in 1997 but by the time of trial had a tattoo of the number 18 that covered most of his back and had "West Side" tattooed on his stomach. Eighteenth Street is the largest gang in California and is "continually expanding throughout the United States." The gang's 106 clique is located just north of where the robbery occurred. The 106 clique and Little Watts appear to have begun an association in July or August 2000.

Goetz explained that gang members reveal the name of their gang during the commission of crimes because they want the victims to know who committed the offense in order to gain respect for the gang, to instill fear in the community, and to increase their own level of respect within the gang. The 18th Street gang has been known to permit smaller gangs to take credit for joint gang activities. By working together, 18th Street and Little Watts expand their alliances and territory. In the event of a gang war, each gang could call on a larger number of members. Goetz testified that gang members commit crimes and that they are criminals, not law-abiding citizens. He opined that gang members commit crimes to "buy dope, and to purchase weapons to commit more crimes or defend their territory."

To establish a "pattern of criminal gang activity" as defined in section 186.22, subdivision (e), the prosecution introduced evidence that two members of Little Watts had been convicted of driving a vehicle without the owner's consent in March 2000, and another suffered a sustained juvenile petition for driving a vehicle without the owner's consent in October 1999.

### C. *Procedural History*

Defendants were charged with robbing Rodriguez, during which Hernandez used a dangerous or deadly weapon, and with another offense that was later dismissed. (§§ 211, 12022, subd. (b)(1).) The prosecution also alleged that the robbery was committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) Before trial, defendants moved to bifurcate trial of the criminal street gang enhancement from that of the underlying offenses. The court denied the motion, ruling as follows: "I recognize there is prejudice, but there will be evidence in the trial without that allegation of gang membership which creates a prejudice to begin with. Its probative value seems to outweigh . . . what additional prejudice there might be, so the motion is denied."

A jury convicted defendants of the charged robbery and found the criminal street gang enhancement true. The Court of Appeal affirmed the judgment. It

held that the trial court abused its discretion in denying the bifurcation motion, but found the error harmless. It did not decide whether the court was obligated to give a limiting instruction on how the jury could use the gang evidence, but instead found the failure to give such an instruction in this case harmless. We granted defendants' petitions for review limited to the questions whether the trial court prejudicially erred by (1) denying defendants' bifurcation motion, and (2) failing to give the jury a limiting instruction on the permissible uses of the gang evidence.

## II. Discussion

### A. *Background*

In 1988, the Legislature enacted the California Street Terrorism Enforcement and Prevention Act (the STEP Act). (§ 186.20 et seq.) "The impetus behind the STEP Act . . . was the Legislature's recognition that 'California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to the public order and safety and are not constitutionally protected.' (§ 186.21.)" (*People v. Montes* (2003) 31 Cal.4th 350, 354 [2 Cal.Rptr.3d 621, 73 P.3d 489].)

As relevant here, the STEP Act prescribes increased punishment for a felony if it was related to a criminal street gang. (§ 186.22, subd. (b)(1).) "[T]o subject a defendant to the penal consequences of the STEP Act, the prosecution must prove that the crime for which the defendant was convicted had been 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.' (§ 186.22, subd. (b)(1) . . . .)[2] In addition, the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting *two or more* of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period. (§ 186.22, subds. (e) and (f).)" (*People v. Gardeley, supra,* 14 Cal.4th at pp. 616–617.)

In order to prove the elements of the criminal street gang enhancement, the prosecution may, as in this case, present expert testimony on

---

[2] The STEP Act has been amended many times since it was first enacted. The ellipsis here deletes an obsolete statutory reference. In all other respects, the current version is as described in the text.

criminal street gangs. (*People v. Gardeley, supra,* 14 Cal.4th at pp. 617–620.) Some of the evidence produced to establish this enhancement may be inadmissible to prove the underlying crime. Because of this circumstance, defendants asked the trial court to bifurcate the trial, with the jury first determining guilt and then, if the jury found defendants guilty, hearing evidence on, and deciding the truth of, the gang enhancement allegation. They argue the court erred (1) in refusing to bifurcate the trial, and (2) in failing at least to instruct the jury on the permissible use it might make of the gang evidence. We consider both questions.

### B. *Bifurcation*

In *Calderon, supra,* 9 Cal.4th 69, we held "that a trial court has the discretion, in a jury trial, to bifurcate the determination of the truth of an alleged prior conviction from the determination of the defendant's guilt of the charged offense . . . ." (*Id.* at p. 72.) Although no statute requires bifurcation, we found authority to bifurcate trial issues "in section 1044, which vests the trial court with broad discretion to control the conduct of a criminal trial: 'It shall be the duty of the judge to control all proceedings during the trial . . . with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.' " (*Id.* at pp. 74–75.) Defendants argue that the trial court should have ordered a similar bifurcation, with guilt of the underlying charge tried first and the truth of the gang enhancement allegation tried only if, and after, the jury found them guilty. We disagree.

 The court here did not deny bifurcation because it believed it lacked authority to bifurcate, but as an exercise of its discretion. We see no abuse of that discretion. In *Calderon* we emphasized the unique prejudice that may ensue if the jury that determines guilt also learns of the defendant's status as a person with one or more prior convictions. "In fact, the value of bifurcating the determination of the truth of a prior conviction allegation from the determination of guilt of the charged offense has been widely recognized." (*Calderon, supra,* 9 Cal.4th at pp. 75–76; see *id.* at pp. 76–77 [citing the American Bar Association's Standards for Criminal Justice, various decisions and statutes around the country, and the Model Penal Code].) A gang enhancement is different from the prior conviction at issue in *Calderon.* A prior conviction allegation relates to the defendant's *status* and may have no connection to the charged offense; by contrast, the criminal street gang enhancement is attached to the charged offense and is, by definition, inextricably intertwined with that offense. So less need for bifurcation generally exists with the gang enhancement than with a prior conviction allegation. (See *People v. Martin* (1994) 23 Cal.App.4th 76, 81 [28 Cal.Rptr.2d 660].)

■ The Legislature itself has specifically recognized the potential for prejudice when a jury deciding guilt hears of a prior conviction. It has provided that if the defendant admits the prior conviction, "the charge of the prior conviction shall neither be read to the jury nor alluded to during trial, except as otherwise provided by law." (§ 1025, subd. (e); see *Calderon, supra,* 9 Cal.4th at p. 73.) Although no statute specifically requires bifurcation when the defendant does not admit the conviction, section 1025 shows the Legislature is concerned with the problem of prejudice when a jury learns of a prior conviction. But the Legislature has given no indication of a similar concern regarding enhancements related to the charged offense, such as a street gang enhancement. Nothing in section 186.22 suggests the street gang enhancement should receive special treatment of the kind given prior convictions. (See also §§ 190.1, subds. (a), (b) , 190.2, subd. (a)(2), (22) [requiring the truth of a prior murder conviction special circumstance be tried only after the guilt determination, but other special circumstances, including a gang special circumstance like the gang enhancement of this case, be determined at the same time as the guilt determination].)

■ This is not to say that a court should never bifurcate trial of the gang enhancement from trial of guilt. The authorization we found in *Calderon, supra,* 9 Cal.4th 69, for bifurcation of a prior conviction allegation also permits bifurcation of the gang enhancement. The predicate offenses offered to establish a "pattern of criminal gang activity" (§ 186.22, subd. (e)) need not be related to the crime, or even the defendant, and evidence of such offenses may be unduly prejudicial, thus warranting bifurcation. Moreover, some of the other gang evidence, even as it relates to the defendant, may be so extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt.

■ In cases *not* involving the gang enhancement, we have held that evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal. (E.g., *People v. Cardenas* (1982) 31 Cal.3d 897, 904–905 [184 Cal.Rptr. 165, 647 P.2d 569].) ■ But evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. (See, e.g., *People v. Mendoza* (2000) 24 Cal.4th 130, 178 [99 Cal.Rptr.2d 485, 6 P.3d 150] [element of fear]; *People v. Williams* (1997) 16 Cal.4th 153, 193 [66 Cal.Rptr.2d 123, 940 P.2d 710] [motive and identity]; *People v. Champion* (1995) 9 Cal.4th 879, 922–923 [39 Cal.Rptr.2d 547, 891 P.2d 93] [identity].) To the extent the evidence supporting the gang enhancement would be

admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary. (See *People v. Balderas* (1985) 41 Cal.3d 144, 171–172 [222 Cal.Rptr. 184, 711 P.2d 480] [discussing severance of charged offenses].)

Even if some of the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime itself—for example, if some of it might be excluded under Evidence Code section 352 as unduly prejudicial when no gang enhancement is charged—a court may still deny bifurcation. In the context of severing charged offenses, we have explained that "additional factors favor joinder. Trial of the counts together ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials." (*Frank v. Superior Court* (1989) 48 Cal.3d 632, 639 [257 Cal.Rptr. 550, 770 P.2d 1119].) Accordingly, when the evidence sought to be severed relates to a charged offense, the "burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried. [Citations.] When the offenses are joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise. The other-crimes evidence does not relate to [an] offense for which the defendant may have escaped punishment. That the evidence would otherwise be inadmissible may be considered as a factor suggesting possible prejudice, but countervailing considerations that are not present when evidence of uncharged offenses is offered must be weighed in ruling on a severance motion. The burden is on the defendant therefore to persuade the court that these countervailing considerations are outweighed by a substantial danger of undue prejudice." (*People v. Bean* (1988) 46 Cal.3d 919, 938–939 [251 Cal.Rptr. 467, 760 P.2d 996].)

 The analogy between bifurcation and severance is not perfect. Severance of charged offenses is a more inefficient use of judicial resources than bifurcation because severance requires selection of separate juries, and the severed charges would always have to be tried separately; a bifurcated trial is held before the same jury, and the gang enhancement would have to be tried only if the jury found the defendant guilty. But much of what we have said about severance is relevant here, and we conclude that the trial court's discretion to deny bifurcation of a charged gang enhancement is similarly broader than its discretion to admit gang evidence when the gang enhancement is not charged. (See *People v. Balderas, supra,* 41 Cal.3d at p. 173.) We also find no abuse of discretion in this case.

Much of the gang evidence here was relevant to the charged offense. Indeed, defendant Hernandez himself injected his gang status into the crime.

He identified himself as a gang member and attempted to use that status in demanding money from the victim. Although Fuentes did not specifically identify himself as a gang member, the evidence showed the robbery was a coordinated effort by two gang members who used gang membership as a means to accomplish the robbery. Detective Goetz's expert testimony helped the jury understand the significance of Hernandez's announcement of his gang affiliation, which was relevant to motive and the use of fear. Evidence concerning the alliance between Hawthorne Little Watts and the 106 clique of the 18th Street gang served to explain why Hernandez and Fuentes were acting together in the commission of this crime, thus buttressing such guilt issues as motive and intent.

Even if some of the expert testimony would not have been admitted at a trial limited to guilt, the countervailing considerations that apply when the enhancement is charged permitted a unitary trial. The evidence that some members of Little Watts had been convicted of driving a vehicle without the owner's consent would certainly not have been admissible at a trial limited to the charged offense, but that evidence was also not particularly inflammatory. Those convictions were offered to prove the charged gang enhancement, so no problem of confusion with collateral matters would arise, and they were not evidence of offenses for which a defendant might have escaped punishment. Any evidence admitted solely to prove the gang enhancement was not so minimally probative on the charged offense, and so inflammatory in comparison, that it threatened to sway the jury to convict regardless of defendants' actual guilt. Accordingly, defendants did not meet their burden "to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." (*People v. Bean, supra*, 46 Cal.3d at p. 938.) The court acted within its discretion in denying bifurcation.

### C. *Limiting Instruction*

Defendants contend the court should at least have instructed the jury on the limited use it could make of the gang evidence. "When evidence is admissible as to one party or for one purpose and is inadmissible as to another party or for another purpose, the court *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly." (Evid. Code, § 355, italics added.) Thus, although a court should give a limiting instruction on request, it has no sua sponte duty to give one. (*People v. Jones* (2003) 30 Cal.4th 1084, 1116 [135 Cal.Rptr.2d 370, 70 P.3d 359] [no sua sponte duty to give instruction limiting gang membership evidence]; *People v. Collie* (1981) 30 Cal.3d 43, 63–64 [177 Cal.Rptr. 458, 634 P.2d 534] [no sua sponte duty to give limiting instruction on evidence of past criminal conduct].) *Collie, supra*, at page 64, recognizes a possible exception in "an occasional extraordinary case in which unprotested evidence . . . is a dominant part of the

evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose." (See *People v. Farnam* (2002) 28 Cal.4th 107, 163–164 [121 Cal.Rptr.2d 106, 47 P.3d 988].) This is no such extraordinary case. All of the gang evidence was relevant to the gang enhancement, which was a legitimate purpose for the jury to consider it. Accordingly, the trial court must give a limiting instruction on evidence admitted to support the gang enhancement only on request.[3]

■ In this case, after the court denied defendants' severance motion, counsel for Fuentes asked, "Is the court going to read any cautionary instructions or pre-instruct the jury about how they are to use the gang evidence?" The court responded, "I don't have any problem with saying that when the time comes." Counsel for Fuentes said, "But even just in terms of reading the information." The court said, "Not at the time of reading the information but at the time the evidence is to be presented." Counsel for Fuentes ascertained that the court would not yet be making any ruling on the admissibility of expert gang testimony because it had not been asked to do so. No one renewed the question of a limiting instruction, not even when the parties discussed in detail what instructions the court would give. The court did not give a limiting instruction, and neither defendant asked for one or proposed any specific language. Indeed, after the parties and court finished going over the instructions to be given, the attorneys remained silent when the court specifically said, "Let me know of anything you suggest." Under these circumstances, a question asked of the court before the evidence portion of trial, and before any gang evidence was offered or ruled on, was not an adequate request for a limiting instruction. Neither defendant specifically made clear he wanted such an instruction in light of the evidence actually admitted or requested any specific language regarding that evidence. Because defendants did not specifically request a limiting instruction at the appropriate time, the court had no sua sponte duty to give one.

Defendants contend counsel were ineffective in not requesting a limiting instruction. "To establish ineffective assistance, defendant bears the burden of showing, first, that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms.

---

[3] Defendant Fuentes cites three Court of Appeal decisions for the proposition that a sua sponte duty exists to give a limiting instruction. We disapproved one of those cases (*People v. Williams* (1970) 11 Cal.App.3d 970 [90 Cal.Rptr. 292]) in *People v. Collie, supra,* 30 Cal.3d at page 64, footnote 19. Of the other two cases, one (*People v. Mayfield* (1972) 23 Cal.App.3d 236 [100 Cal.Rptr. 104]) predated *Collie,* and the other (*People v. Lomeli* (1993) 19 Cal.App.4th 649 [24 Cal.Rptr.2d 5]) relied entirely on *Mayfield.* Neither opinion mentions Evidence Code section 355. We also disapprove of *People v. Mayfield, supra,* 23 Cal.App.3d 236, and *People v. Lomeli, supra,* 19 Cal.App.4th 649, to the extent they are inconsistent with Evidence Code section 355 and our decisions.

Second, a defendant must establish that, absent counsel's error, it is reasonably probable that the verdict would have been more favorable to him." (*People v. Hawkins* (1995) 10 Cal.4th 920, 940 [42 Cal.Rptr.2d 636, 897 P.2d 574].) "If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212 [65 Cal.Rptr.2d 240, 939 P.2d 354].) On this record, we cannot say that counsel were deficient for not requesting a limiting instruction. "A reasonable attorney may have tactically concluded that the risk of a limiting instruction . . . outweighed the questionable benefits such instruction would provide." (*People v. Maury* (2003) 30 Cal.4th 342, 394 [133 Cal.Rptr.2d 561, 68 P.3d 1]; see also *Hawkins, supra*, at p. 942.)

Once the gang evidence was admitted in this case, much of it was relevant to, and could be considered regarding, the charged offense. Hernandez himself told the robbery victim she was "dealing with" a gang member, specifically "Hawthorne Little Watts." Gang testimony was relevant to permit the jury to understand Hernandez's statement, to show intent to steal, to show a motive for the crime, to explain how Hernandez's statement could induce fear in the victim, and to explain how the two defendants were working together, all of which were factors relevant to defendants' guilt. The gang evidence was not admissible, and the jury could not consider it, solely to show that defendants were persons of bad character or had a disposition to commit crimes, but an instruction on use of this testimony properly might explain how it *could* be used as well as how it could not be used. (Cf. CALJIC No. 2.50 [explaining that evidence of other crimes may not be considered to show the defendant is a bad person or has a disposition to commit crimes but also outlining the proper purposes for which the evidence may be considered].) In this case, no one suggested the evidence could be used to show defendants were bad persons. Under the circumstances, defense counsel might reasonably have concluded it best if the court did not explain how the evidence could be used.

Some of the evidence was irrelevant and could not be considered for any purpose, e.g., to show guilt of the charged offense. The evidence that other members of the Little Watts gang had been convicted of driving a vehicle without the owner's consent was certainly irrelevant to defendants' guilt of the charged offense, although it was relevant to establish the gang enhancement. But counsel might reasonably not have wanted the court to emphasize this evidence either, "especially since it was obvious for what purpose it was being admitted." (*People v. Freeman* (1994) 8 Cal.4th 450, 495 [34 Cal.Rptr.2d 558, 882 P.2d 249].) This record presents no basis for finding that counsel acted ineffectively.

We also agree with the Court of Appeal that the failure to give a limiting instruction was harmless. As noted, the jury *could* properly consider most of the gang evidence on guilt, although not merely as showing that defendants were bad people. No one suggested that defendants should be found guilty solely because they were bad people. Even absent an instruction, it would have been obvious to the jury that the other gang members' convictions of driving a vehicle without the owner's consent were not relevant to and, accordingly, could not be considered regarding, defendants' guilt of this robbery. Those convictions were also not particularly inflammatory. Accordingly, a limiting instruction would not have significantly aided defendants under these facts or weakened the strength of the evidence of guilt the jury properly could have considered.

### III. CONCLUSION

The Court of Appeal held that the trial court erred in denying bifurcation, but it found the error harmless. As explained, we conclude that the trial court acted within its discretion in denying bifurcation. The Court of Appeal also found harmless the trial court's failure to give a limiting instruction. We conclude the court had no duty to give a limiting instruction. Because we conclude the Court of Appeal reached the correct result, we affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.