Filed 11/13/13  P. v. Knotchapone CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>RODNEY OWEN KNOTCHAPONE,<br><br>     Defendant and Appellant. | A134683<br><br>(Sonoma County<br>Super. Ct. No. SCR 549215) |


Defendant Rodney Owen Knotchapone (appellant) appeals following his conviction by a jury of assault with a firearm, with an enhancement that the assault was committed for the benefit of a criminal street gang, and of active participation in a criminal street gang.  Appellant contends the trial court abused its discretion in denying his motions to bifurcate determination of the gang enhancement and sever trial on the gang participation charge, and the jury's findings on the gang enhancement and participation charge are not supported by substantial evidence.  We affirm.

## PROCEDURAL BACKGROUND

Appellant and a codefendant, Patrick Natchapani, were charged in an information with attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a); count 1), assault with a firearm (*id*., § 245, subd. (a)(2); count 2), and active participation in a criminal street gang (*id*., § 186.22, subd. (a); count 3).  Among other things, an enhancement

1

allegation that the assault was committed for the benefit of a criminal street gang (*id*., § 186.22, subd. (b)(1)(C)) was attached to count 2.[1]

In November 2010, a jury convicted appellant as charged on counts 2 and 3, and found the gang and other enhancements true. The jury could not reach a verdict on count 1. Codefendant Natchapani was convicted on count 2; the jury was unable to reach a verdict on counts 1 and 3, or make a finding on the count 2 gang enhancement as to Natchapani.

In February 2012, the trial court sentenced appellant to an aggregate term of 24 years in prison.[2] This appeal followed.

## FACTUAL BACKGROUND

On August 28, 2006, around 2:20 a.m., the victim, Clifton Andrews, dropped off a friend at her house on Santa Rosa Avenue. He got out of his car and helped his friend carry bags to her apartment, and as he returned to his car he heard someone call out to him from Juilliard Park, across the street from his friend's apartment building. The person asked the victim to approach, and the victim did so.

The victim came within 15 feet of the person who called him over, and the victim noticed the person in the park was a young man. The man, later identified as codefendant Natchapani, said, "I see you guys came back," "you guys think we're fucking around with you," and "you mother fuckers think we're bullshit." The victim said he didn't know what Natchapani was talking about and started to turn around to return to his car. Natchapani said, "I'm going to show you we're not bullshitting," and a second man emerged from behind Natchapani and began shooting. The victim ran, and he was hit by bullets in both of his legs. He collapsed in the street, and the victim's friend came to his aid.

---

[1]  All undesignated section references are to the Penal Code. All further references to subdivisions (a) or (b) of section 186.22 will be styled as section 186.22(a) or (b).

[2]  We note appellant's name is misspelled in the abstract of judgment filed on February 21, 2012. We will direct the trial court to correct the error.

Santa Rosa Police Officer Cregan responded to a call of a shooting on Santa Rosa Avenue on August 28, 2006, at 2:26 a.m. Cregan contacted the victim, who said he had been shot by two young men. The victim was transported to the hospital, and Cregan and an evidence technician investigated the crime scene and spoke to witnesses. Neighbors reported they heard gunshots and then saw two men running through the park. Shell casings were found in the park, as well as a white baseball cap on a bush. DNA found on the baseball cap matched appellant's DNA.

Santa Rosa Police Officer Hepp and another officer searched for suspects. At 2:39 a.m., the officers found appellant and Natchapani sitting beneath a freeway overpass about one-half mile from the scene of the shooting. Hepp asked the men what they were doing there at that time of night. Appellant and Natchapani said they were just "hanging out." Appellant and Natchapani were "agitated" and yelled obscenities at the officers. Although it was a cool night, Hepp noticed that both men had warm skin, as though they had just been engaged in physical activity. Appellant was wearing a T-shirt with a large blue sports logo, blue shorts, and shoes with blue trim. Natchapani was wearing a navy blue T-shirt. The officers detained appellant and Natchapani and then released them after an in-field lineup before witnesses, not including the victim.

On the evening of August 29, 2006, a Santa Rosa police detective showed the victim two photo lineups of potential suspects, including appellant and Natchapani. The victim identified Natchapani as the man who called him over. He tentatively identified another man, not appellant, as Natchapani's companion. The next day, the victim came to the police station and told the detective he was certain of his identification of Natchapani, but the other man he had tentatively identified was not involved.

The police arrested appellant and Natchapani and, pursuant to a warrant, searched the Santa Rosa home where they resided. In a bedroom shared by appellant and Natchapani, the police recovered a number of items of blue clothing and photographs in which some individuals were wearing blue clothing or flashing gang signs. The police also found a napkin in the bedroom containing a drawing of a bullet in blue ink and the

3

notations "9 MM" and "RBK," also in blue ink. A "CD" found in the living room was marked "ABZ" and "1226" in blue ink.

Santa Rosa Police Officer Wojcik testified as an expert on criminal street gangs. He described an active Sonoma County gang called the Asian Boyz, which is considered a Crips gang. Members of the Asian Boyz commonly use the abbreviations "ABZ" and "1226" and wear the color blue, and they use hand signs resembling the letters "A" for Asian Boyz and "C" for Crips. Wojcik testified that the Asian Boyz "function on fear," and committing an assault against a person perceived to have disrespected the gang would benefit the gang by strengthening the gang's reputation for violence and instilling fear in rivals and the community.

Wojcik also related that law enforcement officers had encountered appellant on a number of previous occasions in the company of known members of the Asian Boyz. In several of the encounters, appellant was wearing blue clothing; and, in March 2003, he admitted he was a member of the Asian Boyz. Wojcik testified that a number of items seized from appellant and Natchapani's home—the blue clothes, photographs, CD, and napkin—were consistent with an association with the Asian Boyz. With respect to the napkin with a drawing of a bullet in blue ink, Wojcik opined that the notation "9 MM" referred to "nine-millimeter," the type of ammunition used in the shooting, and "RBK" stood for "Rodney Blood Killer," with the Bloods being rivals of the Crips. Wojcik also pointed out that appellant and Natchapani were wearing blue clothing the night of the shooting, Natchapani was wearing a belt with a "C" on it that night, and one of the contacts on appellant's cell phone was known to Wojcik to be a participant in the Asian Boyz and was listed under his gang moniker.

An expert on eyewitness identification testified on behalf of codefendant Natchapani, describing factors that affect the reliability of identifications by victims. Natchapani also presented an expert on criminal street gangs who testified that, based on his review of the record, he did not believe Natchapani was an active participant in a criminal street gang at the time of the shooting.

4

DISCUSSION

I. *Appellant's Motions to Bifurcate and to Sever*

Appellant contends the trial court erred in denying his motions to bifurcate determination of the gang enhancement and to sever trial on the gang participation charge from the other offenses.[3] He argues denial of his motions resulted in a fundamentally unfair trial.

As to bifurcation, the trial court had authority under section 1044 to bifurcate the determination of the applicability of the gang enhancement from the determination of appellant's guilt on the underlying assault charge. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048 (*Hernandez*).) A defendant seeking such bifurcation must " '. . . clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried. . . .' " (*Id.* at p. 1051.) The trial court's decision not to bifurcate the determination on an enhancement is reviewed for abuse of discretion. (*Id.* at p. 1048.)

In *Hernandez*, the court stated that the section 186.22(b)(1) gang enhancement is, "by definition, inextricably intertwined with [the underlying] offense." (*Hernandez*, *supra*, 33 Cal.4th at p. 1048; see also *id.* at p. 1047.) The court explained, "evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.] To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary. [Citation.]" (*Id.* at pp. 1049-1050.)

---

[3]  Appellant's counsel requested "bifurcation" of determination of the gang participation charge, rather than severance of trial on the charge. (See *People v. Burnell* (2005) 132 Cal.App.4th 938, 946.) However, the parties agree the trial court properly treated the request as a motion to sever.

5

As to severance of the gang participation charge, section 954 provides a trial court discretion to order that different counts set forth in an accusatory pleading be tried separately "in the interests of justice and for good cause shown."  (See also *People v. Vines* (2011) 51 Cal.4th 830, 855 (*Vines*).)  " 'The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.' [Citation.] [¶] 'The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial.' [Citation.]  Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case.  [Citations.]" (*People v. Sandoval* (1992) 4 Cal.4th 155, 172-173; accord, *Vines*, at p. 855.)  The first factor is critical, because if the evidence is cross-admissible, "any inference of prejudice is dispelled." (*Vines*, at pp. 855-856.)

On appeal, appellant argues the trial court erred in denying the motions to bifurcate and sever because the gang evidence enabled the prosecutor to buttress a weak case.  He asserts, "The prosecution's claim that appellant shot [the victim] was necessarily weak because the victim could not identify appellant as the man who shot him.  The prosecution remedied this situation by inflaming the jury into concluding that appellant was guilty of the shooting because he was, as a gangster, criminally disposed to committing such acts.  The evidence also impermissibly created a desire on the part of the jury to punish appellant for criminal gang activity unrelated to the charged crime."  However, although gang evidence does present a risk of undue prejudice by suggesting a defendant has a criminal disposition (*Hernandez*, *supra*, 33 Cal.4th at p. 1049; *People v. Williams* (1997) 16 Cal.4th 153, 193), the trial court did not abuse its discretion because a

similar body of evidence was relevant to the assault charge, the gang enhancement, and the gang participation charge.

The gang evidence was clearly probative to the count 2 assault charge because it provided a motive for the attack. As noted previously, the victim testified that Natchapani yelled, "I see you guys came back," "you guys think we're fucking around with you," "you mother fuckers think we're bullshit," and "I'm going to show you we're not bullshitting." The victim was shot immediately thereafter. The evidence of appellant's gang participation and the expert testimony explaining how such an attack could benefit the Asian Boyz established a motive for the attack, which was otherwise entirely unexplained. "Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related. [Citation.] ' "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence." [Citations.]' [Citations.]" (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167-1168.) Moreover, the evidence of the assault was relevant to the gang participation charge because it constituted "felonious criminal conduct by" gang members (§ 186.22(a)), which was required for conviction on the gang participation charge. (See pp. 10-11, *post*.) Further, "[a]ny evidence admitted solely to prove the gang enhancement was not so minimally probative on the charged offense, and so inflammatory in comparison, that it threatened to sway the jury to convict regardless of [appellant's] actual guilt." (*Hernandez, supra*, 33 Cal.4th at p. 1051.)

Because the evidence on the assault charge and the gang enhancement and gang participation charge was cross-admissible, the trial court did not abuse its discretion in denying the motions to bifurcate and sever. (*Hernandez, supra*, 33 Cal.4th at pp. 1049-1050; *Vines*, *supra*, 51 Cal.4th at pp. 855-856.)

II. *Sufficiency of the Evidence*

Appellant challenges the sufficiency of the evidence to support his conviction on the count 3 charge of active participation in a criminal street gang (§ 186.22(a)), and the jury's finding on the gang enhancement (§ 186.22(b)(1)(C)) attached to count 2. He

7

contends there is no substantial evidence he was an active participant in the Asian Boyz at the time of the shooting, he committed the shooting for the benefit of the gang, and codefendant Natchapani was a member of the Asian Boyz at the time of the shooting.

Section 186.22 is part of the California Street Terrorism Enforcement and Prevention Act, also known as the "STEP Act." (§ 186.20.) Section 186.22 contains two relevant provisions, a substantive offense in subdivision (a) and a sentence enhancement in subdivision (b)(1). Section 186.22(a) states in pertinent part: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang" shall be punished by a jail or prison sentence. The offense has three elements: (1) "Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive"; (2) "knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity"; and (3) "that the person 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' " (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)

The enhancement provision, section 186.22(b)(1), provides, with exceptions not relevant here, that "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall" be punished by an enhanced penalty consecutive to the punishment for the felony.

"We review claims of insufficient evidence by examining the entire record in the light most favorable to the judgment below. [Citation.] We review to determine if substantial evidence exists for a reasonable trier of fact to find the counts against the [defendant] true beyond a reasonable doubt. [Citation.] Substantial evidence must be reasonable, credible, and of solid value. [Citation.] We also presume the existence of every fact the lower court could reasonably deduce from the evidence in support of its judgment. [Citation.]" (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196.)

8

A. *Sufficiency of the Evidence of Active Participation and Gang Benefit*

Appellant contends there is no substantial evidence from which the jury could have concluded beyond a reasonable doubt he was an active participant in the Asian Boyz at the time of the shooting and the shooting was committed with the intent to benefit the gang. As to the first issue, section 186.22(a) requires "involvement with a criminal street gang that is more than nominal or passive" (*People v. Castenada* (2000) 23 Cal.4th 743, 747) and "at or reasonably near the time of the crime" (*People v. Garcia* (2007) 153 Cal.App.4th 1499, 1509). As to the second issue, section 186.22(b) requires that the predicate offense be gang-related, because " '[n]ot every crime committed by gang members is related to a gang.' " (*People v. Galvez* (2011) 195 Cal.App.4th 1253, 1260 (*Galvez*).)

The evidence on both issues is interrelated. Appellant concedes there was evidence he was a member of the Asian Boyz at a previous time, including his March 2003 admission to the police he was a member. But there was also evidence of active participation in the gang at the time of the shooting: Appellant was wearing multiple items of blue clothing the night of the shooting; the room he shared with Natchapani had a number of items of blue clothing, photos of people in blue or flashing gang signs, and a napkin that the gang expert opined declared appellant to be a killer of members of a rival gang; there was a CD marked with references to the Asian Boyz in the living room; and the shooting itself appeared to be motivated by a desire to assert a gang's dominance over another, even though no gangs were referred to by name.

This evidence was sufficient to establish the active participation element of section 186.22(a). It was also sufficient to show the assault was committed for the benefit of the Asian Boyz. Wojcik explained that an assault against a person perceived to have disrespected the gang would benefit the gang by strengthening the gang's reputation for violence and instilling fear in rivals and the community. (See *People v. Albillar* (2010) 51 Cal.4th 47, 63 ["Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the

9

meaning of section 186.22(b)(1)."].)  This was not, as appellant asserts, pure speculation on the part of Wojcik.  Instead, the evidence provided "an underlying evidentiary foundation" for the testimony.  (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 659; see also *Galvez, supra,* 195 Cal.App.4th at p. 1261.)  In addition to the testimony Wojcik provided about the Asian Boyz in general, the blue clothes worn by appellant and Natchapani the night of the shooting and Natchapani's verbal challenge to the victim constituted solid evidence the shooting was gang-related.  It is possible appellant and Natchapani were acting only on their own behalf in shooting the victim, but the evidence was sufficient for the jury to conclude they were acting for the benefit of their gang.

B.  *Sufficiency of the Evidence Natchapani Was a Gang Member*

Appellant contends there is no substantial evidence from which the jury could have concluded beyond a reasonable doubt codefendant Natchapani was a member of the Asian Boyz at the time of the shooting.  That finding is relevant to the section 186.22(a) gang participation charge, because the California Supreme Court concluded in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*) that a gang member who acts alone in committing a felony does not violate section 186.22(a).

In *Rodriguez*, the court interpreted the element of the gang participation offense requiring that the defendant have "willfully promot[ed], further[ed], or assist[ed] in any felonious criminal conduct by members of that gang."  (§ 186.22(a); *Rodriguez*, *supra*, 55 Cal.4th at p. 1128.)  The question before the court was, "does a gang member violate section 186.22(a) if he commits a felony, but acts alone?"  (*Rodriguez*, at p. 1128.)  *Rodriguez* held the statute's use of the plural "members" means that a gang member defendant must further or promote the criminal conduct of himself and at least one other gang member in order to be convicted for violation of the statute.  (*Id.* at p. 1132.)  The Supreme Court reasoned:  "Section 186.22(a) speaks of 'criminal conduct by *members* of that gang.' . . .  '[M]embers' is a plural noun.  The words 'promotes, furthers, or assists' are the verbs describing the defendant's acts, which must be performed willfully.  The phrase 'any felonious criminal conduct' is the direct object of these verbs.  The prepositional phrase 'by members of that gang' indicates who performs the felonious

10

criminal conduct. Therefore, to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct. The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. (See § 186.22, subd. (i).)" (*Ibid.*)

In the present case, the jury impliedly found that appellant and Natchapani were gang members who jointly participated in the assault. Appellant contends there was no substantial evidence Natchapani was a member of the Asian Boyz. We disagree. Wojcik related that the police had previously encountered Natchapani in the company of known members of the Asian Boyz, and that on the night of the shooting Natchapani was wearing not only a blue T-shirt but also a belt with a "C" on it. The room Natchapani shared with appellant had various gang indicia, and there was a CD marked with references to the Asian Boyz in the living room. Finally, it was Natchapani who contacted the victim and made threatening remarks consistent with a gang motive for the assault.

Appellant also argues his conviction on the gang participation offense is precluded by the jury's failure to reach a verdict on the gang participation charge and gang enhancement against Natchapani, which he asserts reflects the absence of jury consensus that Natchapani was a member of the Asian Boyz. On the other hand, the conviction of appellant on the gang participation charge reflects an implied finding that Natchapani was a gang member. Even assuming the jury's findings as to Natchapani are inconsistent with the conviction of appellant on count 3, that does not provide a basis to overturn appellant's conviction. As respondent points out, it is well established that "courts necessarily tolerate, and give effect to all parts of, inconsistent verdicts." (*People v. Chun* (2009) 45 Cal.4th 1172, 1204; see also *People v. Carbajal* (2013) 56 Cal.4th 521, 532-533; *People v. Palmer* (2001) 24 Cal.4th 856, 864-865 (*Palmer*).) As explained in *Palmer*, " '[I]t is always possible for a jury to exercise lenity and acquit some of the defendants while convicting others who are in fact no more guilty, and when this happens the convicted defendants have no remedy. [Citations.] Such incongruities are built into

11

the American system of criminal justice . . . ." (*Palmer*, at p. 865.) And, "[i]n any event, a 'criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. . . . [No] further safeguards against jury irrationality are necessary.' [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 601.) Appellant fails to address this line of authority and explain why the inconsistent verdicts require this court to conclude there is insufficient evidence to support his conviction on the gang participation charge.

## DISPOSITION

The judgment is affirmed, and the cause is remanded to the trial court with directions to issue a corrected abstract of judgment reflecting the correct spelling of appellant's last name and to forward the corrected abstract to the California Department of Corrections and Rehabilitation.

　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　SIMONS, Acting P.J.


We concur.


_____

NEEDHAM, J.


_____

BRUINIERS, J.