Filed 4/30/14  P. v. Horcasitas CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B243250 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA380230) |
| v. | |
| MICHAEL HORCASITAS, | |
| Defendant and Appellant. | |

APPEAL from  a judgment of the Superior Court of Los Angeles County, Clifford L. Klein, Judge.  Affirmed.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

A jury found defendant Michael Horcasitas guilty of murder in the first degree. (Pen. Code, § 187, subd. (a).)[1] The jury found true the allegation that defendant personally and intentionally discharged a firearm causing death. (§ 12022.53, subds. (b)–(d).)[2] The jury found not true the allegation that the offense was committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1)(C).) Defendant was sentenced to state prison for a total term of 50 years to life. This appeal followed.

The sole issue raised on appeal is whether the trial court abused its discretion in declining to bifurcate the trial of the criminal street gang allegation from the murder trial. The decision not to bifurcate this issue was well within the trial court's discretion. We therefore affirm.

## FACTS

Defendant, a member of the Varrio 213 gang, met with his friend, Albert Martinez, another individual nicknamed Moco, and the victim, Kurt Deutsch. The purpose of the meeting was that Martinez wanted to buy some counterfeit money on behalf of someone else. Martinez gave $300 to Deutsch, who said he would get the counterfeit money from a friend. Deutsch left and came back with counterfeit bills. Defendant and Moco inspected the bills, were dissatisfied with them, and said so. Defendant told Deutsch to get his friend to fix the counterfeit bills or return the money. Deutsch said his friend was in court and they would have to wait to get hold of him.

This meeting took place on July 23, 2010. Defendant tried for the next five days to get the money back from Deutsch. The principal means of communication between defendant and Deutsch was by phone and text message. The 197 calls from defendant on July 24, 2010, alone attests to the intensity of this stream of communication.

During this period, defendant told Martinez that Deutsch "was making him look like a bitch by coming around and not paying him back his money" and that Deutsch

---

[1] All statutory references are to the Penal Code.

[2] Imposition of sentences on section 12022.53, subdivisions (b) and (c) was stayed in light of the 25-years-to-life sentence on subdivision (d).

2

"was playing him." Defendant said, "'He thinks I'm fucking playing games.'" Since the $300 had been Martinez's money, Martinez told defendant to forget about it but defendant refused to do so, stating that Deutsch thought that defendant was playing games. Defendant said that Deutsch "was making him look like a fool around people" and that "'it's not about the money anymore.'"

On July 28, 2010, Deutsch's father received a call from defendant's phone. A male voice said his son owed about $11,000 and that if Deutsch's father would not pay this sum, his son would be killed. Deutsch's father refused to do so and the call ended.

Deutsch was murdered around 8:00 p.m. on July 28, 2010, in the parking lot of a liquor store.

Defendant asked Lizette Garcia to take Deutsch to the liquor store to cash a counterfeit $100 bill. On arrival at the liquor store parking lot, Garcia exited the car and walked into the liquor store, leaving Deutsch sitting in the car. Surveillance video showed a man whose face could not be seen walk up to the passenger side of the car, engage in a brief dialogue with Deutsch, and then walk around to the driver's side, where he opened the door. The man reached for a gun and fired nine shots. The coroner confirmed that Deutsch had been shot nine times. Deutsch died at the scene.

A week after the murder, defendant described to Martinez the manner in which he had approached and shot Deutsch. His account essentially confirmed what the surveillance tape showed. Defendant bragged to other people about killing Deutsch.

**TESTIMONY ABOUT GANGS**

Montebello police Detective Omar Rodriguez testified as a gang expert at trial. He stated it is important for gang members individually and for a gang as a whole to be respected. Individual gang members must avoid being seen by the community and other gang members as weak. Gangs operate using fear and intimidation so they can commit crimes in the community with impunity, knowing that the community will not report them to the police. According to Detective Rodriguez, the primary activities of defendant's gang are assaults with deadly weapons, vandalism, possession of narcotics for sale, auto theft, burglaries, and possession of firearms.

3

Detective Rodriguez pointed to a number of aspects of defendant's gang that suggested that it has ties to the Mexican Mafia. These are distinctive tattoos, use of the number 13, and the respect that the gang pays to the Mexican Mafia.

Detective Rodriguez was asked whether the murder defendant committed was for the benefit of his gang. Rodriguez answered: "Yes. It's my opinion that it is beneficial for the gang, the action that that gang member [defendant] committed, the manner [*sic*] which he committed it, committing this murder in a busy parking lot during daytime hours, the gang member in my opinion did it in that manner because he wants his reputation and the reputation of his gang to be that of 'we're violent. I'm a very violent person, I'm not someone that's going to be messed with. If you disrespect me, this is what's going to happen to you. If you disrespect someone from my gang, this is what's going to happen to you.'"

## PERTINENT PROCEDURAL HISTORY

Defendant's written pretrial motion to bifurcate the trial of the criminal street gang enhancement from the murder trial was heard June 25, 2012, while the jury was still being selected. There is no reporter's transcript in the record on appeal. The only other relevant entry in the record is the trial court's minute order of June 25, 2012, which states in pertinent part: "Defendant's motion to bifurcate the criminal gang enhancement from the main trial is hear [*sic*], argued and denied."

Defendant's opening brief states the trial court relied on the preliminary hearing transcript in ruling on the motion to bifurcate. While this seems likely, there is no support in the record for this allegation.

## DISCUSSION

"[P]rovision of the record on appeal is a consideration in every appeal. It is a procedural and substantive requirement on the part of any party prosecuting an appeal or asserting a position on appeal. Judgments and orders are presumed correct, and the party attacking a judgment or order has the burden of affirmatively demonstrating error. [Citation.] The appellant has the burden of furnishing an appellate court with a record sufficient to consider the issues on appeal. [Citation.] An appellate court's review is

4

limited to consideration of the matters contained in the appellate record. [Citation.]" (*People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534.) In short, it was defendant's responsibility to include the record of the hearing on the bifurcation motion and this he failed to do.

The failure to provide a reporter's transcript of the argument on the motion to bifurcate presents a serious problem for defendant here, in part because we review the ruling for abuse of discretion in light of the showing made to the trial court and the facts then known, not in light of what happened at trial. (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1244, 1246.) In our attempt to assess what the trial court did, we are prevented by the absence of a reporter's transcript from ascertaining what the parties told the court about why the trial should or should not be bifurcated. As far as we know, the prosecutor made a compelling case for bifurcation by arguing that the gang evidence would serve an important purpose in the murder portion of the trial, for instance by establishing motive or intent.

Defendant also is required to clear a high hurdle in establishing that the trial court erred. We review the trial court's denial of the motion under the abuse of discretion standard. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) "'The term [judicial discretion] implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason.'" (*In re Cortez* (1971) 6 Cal.3d 78, 85.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.)

We cannot say the trial court's decision not to bifurcate was beyond the bounds of reason when we do not even know the factors the parties brought to the court's attention.

Certainly, it is correct to deny bifurcation under appropriate circumstances. The existence of a pattern jury instruction designed to be used when bifurcation of the gang allegations is not ordered contemplates this will be the case. In addition, as the Supreme Court has explained, a criminal street gang enhancement is attached to the charged offense "and is, by definition, inextricably intertwined with that offense. So less need for bifurcation generally exists with the gang enhancement than with a prior conviction allegation." (*People v. Hernandez*, *supra*, 33 Cal.4th at p. 1048.)

As in *Hernandez*, the gang enhancement in this case was intertwined with the murder charge. In particular, a murder in a public place, in daylight on a summer evening, when people were likely to be around, would present an excellent opportunity for a gang to demonstrate to a broad audience the terrible consequences of annoying the gang. Such an act would be calculated to emphasize the audacity and viciousness of the gang. The overkill of nine shots fired into a victim sitting in a car also might proclaim the dangerousness of crossing the gang. Thus, the manner in which the murder was committed certainly could have been found to be so central to the gang enhancement that the court reasonably could conclude that any prejudice to defendant would have been outweighed by the benefit of denying bifurcation to allow the evidence to be presented more efficiently.

Here, the trial court utilized the instructions made available for just this purpose. In instructing the jury prior to deliberations, the trial court stated: "You may consider evidence of gang activity only for the limited purpose of deciding whether: [¶] The defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related crime and enhancement charged, [¶] OR [¶] The defendant had a motive to commit the crime charged. [¶] . . . [¶] You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."

Moreover, the trial judge demonstrated acute consciousness of the need to prevent the jury from utilizing the evidence for an improper purpose. In addressing the prospective jurors prior to trial, the court explained: "I don't want jurors to convict him

6

of a crime simply because he's a gang member and for no other reason. It still has to be proven beyond a reasonable doubt that he committed the homicide . . . if you're convinced he's a gang member and if you're convinced beyond a reasonable doubt about this gang allegation, that's a different issue. I want to be sure that you can separate it and not convict him solely because he's a gang member." The court then gave an illustration of gang evidence being independently relevant. The court concluded: "I want to make sure that you understand that you have to convict him, if you can convict him, on a homicide. You have to be convinced beyond a reasonable doubt he committed the homicide. You can't do it just 'cause he's a gang member."

"Jurors are presumed to understand and follow the court's instructions." (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Here, we have additional support for the conclusion that they did. While the jury convicted defendant of the murder, it found untrue the allegation that the murder was committed for the benefit of a criminal street gang. This suggests that the jury was able separately to compartmentalize the evidence about gangs and the evidence as to defendant's culpability for the murder and to set aside the gang evidence when analyzing defendant's culpability for the murder itself.

Defendant's argument that the evidence of culpability was bolstered by the gang evidence is also belied by the strength of the evidence of the murder. The case against defendant hardly needed bolstering in light of his confession and admissions.

Defendant also contends that much of the gang evidence, such as the significance of numbers in a gang name, proved to be irrelevant to the murder charge. As noted above, we evaluate the trial court's exercise of its discretion in light of what the court knew at the time the decision was made. Based on the record before us, we cannot say the trial judge should have known at the time he ruled on the motion to bifurcate that some of the proffered gang evidence might turn out to be marginally relevant. Moreover, as we have noted, the jury appears to have been able to distinguish between evidence relevant to the gang enhancement and the murder charge.

We find no abuse of discretion by the trial court in denying defendant's motion to bifurcate.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        MILLER, J.*

We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.

---

        * Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.