Filed 4/21/16  P. v. Geragos CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B260024 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA088600) |
| v. | |
| IRA GERAGOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dorothy L. Shubin, Judge.  Affirmed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, and Robert M. Snider, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Ira Geragos (defendant) appeals his convictions for attempted murder, evading a police officer, and assault with a deadly weapon on a police officer. Defendant argues that the trial court erred in admitting portions of a jail phone call he made immediately after his arrest, and that the court failed to give a limiting instruction to the jury on that evidence. Neither of defendant's arguments has merit, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Charged Conduct*

Defendant separated from his wife of 20 years in January 2010. During their marriage, defendant had repeatedly threatened to kill his wife and their two daughters. After the separation, the wife did not see defendant again until December 2012; that month, she saw him two times outside the office complex where Aram Akopyan (Akopyan), her then-current boyfriend, operated his acupuncture practice. When the wife confronted defendant the second time as to why he was there, he replied that his new girlfriend lived nearby and that he did not blame Akopyan for their separation. The wife was surprised that defendant knew Akopyan's name.

In the early afternoon of January 7, 2013, defendant entered the Akopyan's acupuncture office and asked to make an appointment. At first, Akopyan did not recognize defendant as his girlfriend's ex-husband. As he walked away to retrieve the scheduling notebook, Akopyan remembered and turned around. Defendant was holding a 9-millimeter handgun in his hand; defendant aimed the gun at Akopyan's chest, called him a "Motherfucker" and pulled the trigger. Akopyan tried to grab the gun, and defendant shot him twice more, striking him in the wrist and then the elbow. Their struggle for the gun spilled into the courtyard of the office complex. Once in the courtyard, defendant fired the gun a fourth time at Akopyan's head at pointblank range, but he missed and the bullet grazed Akopyan's eyebrow. Defendant fled, and Akopyan identified defendant as the shooter when paramedics arrived to render aid. Akopyan survived.

2

Defendant drove back toward his home.  When police signaled for him to pull over, he sped up and led four police cars on a high-speed chase in which he ran four red lights, drove into oncoming traffic, and attempted to run one police car off the road.  The chase ended when defendant's van collided with a police car.  After a tense standoff, defendant was taken into custody.  Defendant's clothing, as well as a 9-millimeter handgun found in the van, were stained with Akopyan's blood.  At the time of arrest, defendant did not smell of alcohol and did not appear to be intoxicated.

### B.	Post-arrest call

Soon after his arrest, defendant called one of his friends from jail.  The two spoke in Eastern Armenian, and the call—when translated into English—started as follows:

[Friend]:	Where are you calling from?  Did you cancel it already?

[Defendant]:	No, bro, just listen.  I am in Glendale thing . . . I am in Glendale jail, I am in jail.

[Friend]:	Where?

[Defendant]:	In jail.  Listen to me . . . That phone cancel [Unintelligible]

[Friend]:	Where?  Which one?

. . .

[Defendant[1]]:	In Glendale jail, I am in Glendale jail.

[Friend]:	Yeah, did you cancel it or not?

[Defendant]:	No, I didn't get a chance to do it, bro.  You do it.

[Friend]:	But what happened?  Is everything okay?

[Defendant]:	Yeah, yeah.  I shot someone.  I shot someone.

[Friend]:	Oh mother fucker.  Are you crazy, hey man?  [Unintelligible.]  Fuck.

---

**1**	The transcription lists this statement as being made by defendant's friend, but this is obviously a typo.

## II. Procedural History

The People charged defendant with (1) attempted murder (Pen. Code, §§ 187, subd. (a), 664); (2) evading an officer with willful disregard (Veh. Code, § 2800.2); and (3) assault on a police officer with a deadly weapon, a car (§ 245, subd. (c)). The People further alleged that attempted murder was committed willfully, deliberately and with premeditation (§ 664, subd. (a)), that defendant personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), that defendant personally discharged a firearm (§ 12022.53, subd. (c)), that defendant personally used a firearm (§ 12022.53, subd. (b)), and that defendant inflected great bodily injury (§ 12022.7, subd. (a)). The matter proceeded to trial, and a jury convicted defendant of all three crimes, and found true all of the firearm and great bodily injury allegations; the jury found not true the allegation that the attempted murder was committed willfully, deliberately and with premeditation.

The trial court sentenced defendant to state prison for 33 years and four months—seven years on the attempted murder count plus an additional 25 years for personally discharging a firearm causing great bodily injury, plus 16 months (one-third the mid-term) on the assault on a police officer count. The court imposed a two year sentence on the evasion count, but ran it concurrently to the others.

Defendant filed a timely appeal.

## DISCUSSION

On appeal, defendant raises two issues: (1) the trial court erred, under Evidence Code section 352, in admitting the beginning portion of the jailhouse telephone conversation; and, alternatively, (2) the court erred in not giving an instruction limiting the permissible uses of that beginning portion. Because a trial court has "broad discretion" whether to admit evidence under Evidence Code section 352 (*People v. Lancaster* (2007) 41 Cal.4th 50, 83), we review defendant's first claim for an abuse of discretion. (*People v. Merriman* (2014) 60 Cal.4th 1, 74.) We review the second claim of instructional error de novo. (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378.) There was no error.

4

Under Evidence Code section 352, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352; accord, *People v. Lee* (2011) 51 Cal.4th 620, 643.) Citing section 352, defendant asked the trial court to redact the above-quoted portion of the jailhouse call on the ground that a jury might speculate that the friend's "vague" reference to "canceling" the "line" was code for a conspiracy to "cancel" (that is, to kill) Akopyan. The trial court denied defendant's request. The court explained that the beginning portions of the conversation are relevant to show "how the conversation starts out, how it continues, and . . . how it transitions to [defendant] saying he's in custody . . . for the shooting," which is in turn relevant to rebut defendant's asserted defense of being too intoxicated to form the specific intent to kill; the court conversely found that nothing in the beginning portion sounded "nefarious," that it was not "confusing or misleading," and that it was "certainly not unduly prejudicial."

The trial court did not abuse its discretion in coming to this conclusion. Read in context, the call participants' reference to "cancellation" is most logically understood as reference to a prior agreement between the two regarding the cancellation of defendant's telephone service: Defendant's friend asks "did you cancel it already" immediately after asking "where are you calling from?"; defendant says "that phone cancel," explains that he "didn't get a chance to do it," and asks the friend do "do it"; and when defendant explains that he "shot someone," the friend expresses shock and surprise (which is inconsistent with a pre-existing plot to "cancel" Akopyan). Indeed, defendant testified to precisely this explanation of their conversation at trial. Under these circumstances, the court did not abuse its discretion in concluding that the relevance of this evidence to show defendant's ability to form cogent and coherent thoughts soon after his arrest was not outweighed by the remote danger that the jury might speculate that defendant and his friend were having a coded conversation about a nefarious plot to kill Akopyan.

5

Nor did the trial court err in not giving an instruction limiting the jury's consideration of this evidence for certain purposes. Defendant never requested such an instruction, and a trial court is under no duty to give a limiting instruction absent a request for one. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051; Evid. Code, § 355.) Defendant argues that his motion for redaction constitutes an implicit request for such an instruction, but we decline to create an exception for implicit requests that would effectively swallow the general rule requiring explicit ones. Defendant further asserts that his is one of those "'occasional extraordinary'" cases in which a trial court has a sua sponte duty to give a limiting instruction because the "'unprotested evidence . . . is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose.'" (*Hernandez*, at pp. 1051-1052, quoting *People v. Farnam* (2002) 28 Cal.4th 107, 163-164.) This narrow exception does not apply here. The portion of the jailhouse conversation defendant protests lasted only seconds, and is in no sense a "dominant part of the evidence of the accused"—which instead consists of Akopyan's positive identification of the defendant after wrestling with him during the melee following the initial shots, the presence of Akopyan's blood on defendant's clothing and the gun defendant carried with him, defendant's dangerous flight from police, and defendant's motive for the shooting.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST

_____, J.
CHAVEZ

6