Filed 10/5/23  P. v. Rodriguez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

<table>
<tr><td>

THE PEOPLE,

    Plaintiff and Respondent,

v.

ALFREDO RODRIGUEZ,

    Defendant and Appellant.

</td><td>

E080789

(Super.Ct.No. FWV17003091)

OPINION

</td></tr>
</table>

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

In 2018, a jury found defendant and appellant Alfredo Rodriguez guilty of first degree premeditated murder (Pen. Code,[1] § 187, subd. (a), count 1) and unlawfully possessing a firearm as a felon (§ 29800, count 2). The jury further found that he personally and intentionally discharged a firearm in the commission of the murder (§ 12022.53, subd. (d)), and he committed the offenses for the benefit of a criminal street gang (§§ 186.22, subd. (b)(1)(A), (C)). A trial court sentenced him to 60 years to life, plus 5 years in state prison. Defendant appealed, and this court affirmed the judgment. (*People v. Nunez et al.* (July 14, 2022, E071815) [nonpub, opn.].)[2] Our Supreme Court granted review and later transferred the matter back to this court with directions to vacate our decision and reconsider the matter in light of *People v. Tirado* (2022) 12 Ca1.5th 688 (*Tirado*). (*Nunez*, E071815.)

We vacated our decision. We then vacated the findings on the gang enhancements, remanded the matter to the trial court, and gave the People the opportunity to retry the gang enhancements under section 186.22, as amended by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333). We also remanded for resentencing on the section 12022.53, subdivision (d) firearm enhancement under *Tirado*, *supra*, 12 Ca1.5th 688. (*Nunez*, *supra*, E071815.)

---

[1] All further statutory references will be to the Penal Code, unless otherwise indicated.

[2] We take judicial notice of this opinion. (Evid. Code, §§ 452, subd. (a), 459, subd. (a).)

On remand, the prosecution elected not to retry the gang enhancements. The trial court declined to strike the section 12022.53, subdivision (d) firearm enhancement or reduce it to a lesser enhancement under section 12022.5.

Defendant appeals again, this time contending his counsel rendered ineffective assistance by: (1) referring to the victim's gang affiliations at the resentencing hearing, which allegedly "opened the door" to a damaging gang argument by the prosecutor, who had agreed not to retry the gang enhancements; and (2) failing to object to numerous gang references in the probation report. Defendant contends the matter should be remanded for the trial court to reconsider resentencing on the section 12022.53, subdivision (d) firearm enhancement. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In our opinion issued in the prior appeal, we described in detail the evidence presented at trial. (*Nunez*, *supra*, E071815.) For purposes of this appeal, we include the following brief portion of the factual background from our prior opinion:

"Around 11:30 a.m., on July 10, 2017, Rodriguez shot and killed Kofu following an argument between Kofu and Nunez [(the codefendant)] outside of Kofu's home in Fontana. . . . Kofu was affiliated with the Bloods street gang and regularly wore a red bandana on his right side, reflecting the gang's color and style. [¶] A passerby, Jose V., saw Rodriguez shoot Kofu. At the time of the shooting, Jose V. had known Nunez for a long time and had seen Rodriguez once before. Jose V. was driving past Kofu's house, with his windows down, when he saw Kofu standing outside of Kofu's house and saw Nunez's car stopped in the intersection 'across the street' from Kofu's house. Nunez was

3

driving, and Rodriguez was in the front passenger seat. [¶] As Jose V. drove between Nunez's car and Kofu, he heard Nunez and Kofu arguing. . . . [Nunez] got out of his car, and challenged Kofu to a fight. Jose V. saw that Nunez and Kofu had their fists up and were walking toward each other, but he then saw Nunez take several steps back and heard Nunez yell, ' "Sacala huey," ' to Rodriguez, which is Spanish for 'Get it out.' Rodriguez then got out of the car with what looked like a sawed-off shotgun and shot Kofu from a distance of around 10 feet. Kofu fell to the ground and began crawling away from Rodriguez and Nunez. Jose V. then drove away." (*Nunez*, *supra*, E071815.)

The jury found defendant guilty of murder (§ 187, subd. (a), count 1) and unlawfully possessing a firearm as a felon (§ 29800, count 2). It also found that he personally and intentionally discharged a firearm in the commission of the murder (§ 12022.53, subd. (d)), and committed the offenses for the benefit of a criminal street gang (§§ 186.22, subd. (b)(1)(A), (C)). The court sentenced him to 5 years plus 60 years to life in state prison.[3] Following the first appeal, this court affirmed the judgment, rejecting defendant's claim that he was entitled to remand for resentencing so the court could consider whether to impose a lesser term on a lesser firearm enhancement. The California Supreme Court granted review on that issue and transferred the case back to

---

[3] Defendant's five-year determinate term was comprised of two years on count 2, plus three years for the gang enhancement on count 2. On count 1, the court sentenced defendant to two consecutive terms of 25 years to life, one for the murder and one for the firearm enhancement (§ 12022.53, subd. (d)), plus 10 years for the gang enhancement, for a total term of five years plus 60 years to life.

4

this court with directions to vacate our decision and reconsider the matter in light of *Tirado*, *supra*, 12 Cal.5th 688.[4]

Upon reconsideration, the parties agreed that the matter should be remanded for resentencing under *Tirado*, so the court could determine whether to strike the firearm enhancement and impose a term on a lesser firearm enhancement. The parties also agreed that the gang-related enhancements should be vacated, in light of then recently passed Assembly Bill 333.[5] (*Nunez*, *supra*, E071815.) In our opinion, we vacated the gang-related enhancements and remanded the case so the People could be given the opportunity to retry them. We also remanded for resentencing on the firearm enhancement under *Tirado*.

At a hearing on January 27, 2023, the prosecutor indicated he would not be seeking to retry defendant on the gang enhancements. At a subsequent hearing on February 24, 2023, the court heard argument on the *Tirado* issue. Defense counsel began by arguing that "the victim in this case . . . had gang affiliations." He proceeded to state there was a big argument and defendant got out of the car with his shotgun, but "it was

---

[4] In *Tirado*, the Supreme Court held that "[w]hen an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53(d) enhancement, and the court determines that the section 12022.53(d) enhancement should be struck or dismissed under section 12022.53(h), the court may, under section 12022.53(j), impose an enhancement under section 12022.53(b) or (c)." (*Tirado*, *supra*, 12 Cal.5th at p. 700.) Section 12022.53, subdivision (h), provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

[5] Assembly Bill 333 amended section 186.22, modifying the showing necessary to sustain a gang enhancement. (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1119 (*Ramos*).)

more of a trying to defend" his codefendant. The prosecutor responded: "[T]his all stemmed from a beef over the defendant throwing some Corona bottles down the street of the victim's residence into the street. And then, the defendant, who is a decorated gang member from El Monte Flores, is riding shotgun while his codefendant, Nunez, is driving the car." The prosecutor further stated that the victim was "wearing his gang colors" and, after defendant shot the victim, he and his codefendant drove "to gang territory in El Monte." The prosecutor "reiterate[d] that this was a gang-style shooting over gang beefs where the defendant murdered a rival gang member just to have his and his gang's respect"; and, he stated,·"[t]he Court heard all the testimony about that, and his use of a firearm was as brazen and cold-hearted as can be, and it should not be reduced under *Tirado*."

After hearing the arguments, the court stated it would not be striking the section 12022.53, subdivision (d) firearm enhancement or sentencing defendant to a lesser punishment under section 12022.5. The court noted that defendant intentionally used a shotgun to murder an unarmed victim. Next, the court discussed his lengthy criminal history, which involved prior gun enhancements and was comprised of a "total of eight prior felony convictions." The court added that defendant "was on a grant of both probation and parole at the time of the present offense." It also noted there were no circumstances in mitigation. The court then looked at the different mitigating factors in section 1385 and noted there was nothing to indicate the current offense was connected to any mental illness or prior victimization or childhood trauma; the current offense was a violent felony; defendant was an adult at the time; and there was no evidence the firearm

6

was inoperable or unloaded. It added that application of the firearm enhancement would not result in a discriminatory racial impact. (See § 1385, subd. (c)(2)(A)-(I).) The court stated its belief that striking the enhancement would endanger public safety, based on defendant's conduct in the current case and his significant criminal history. It then concluded: "So for all those reasons, I'm going to deny striking the 12022.53(d) enhancement, and I'm not going to use my discretion to add a lesser included related enhancement of 12022.5(a) based on the *Tirado* decision."

The court stated that it had previously struck and vacated the gang enhancements, then sentenced defendant to 50 years to life plus 2 years in state prison.

## III. DISCUSSION

### A. *Defendant Has Not Demonstrated Ineffective Assistance of Counsel* (*IAC*)

Defendant contends he was deprived of effective assistance of counsel guaranteed by the Sixth Amendment to the federal Constitution because his counsel's representation was deficient in two respects: (1) at the resentencing hearing, counsel referred to the victim's gang affiliations and "opened the door to extremely damaging 'gang'-related arguments" by the prosecutor, who had elected not to retry the gang enhancements; and (2) counsel failed to object to the probation report's multiple gang references. Defendant argues that the nature of the gang evidence "was so extremely charged along racial lines that references to this material cannot have failed to impact the court's analysis." We conclude that defendant has failed to establish IAC.

A defendant who claims IAC must establish that his counsel's performance was deficient under an objective standard of professional competency, and that there is a

7

reasonable probability that, but for counsel's errors, a more favorable determination would have resulted.  (*People v. Holt* (1997) 15 Cal.4th 619, 703.)  If the defendant makes an insufficient showing on either one of these components, the claim fails.  (*Ibid.*)  In reviewing claims of IAC, we give great deference to defense counsel's tactical decisions, and "there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' "  (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437; see *Holt*, at p. 703.)  Thus, a defendant raising a claim of IAC on direct appeal carries a difficult burden:  we reverse on the ground of IAC only if the record affirmatively discloses that counsel could have had no rational tactical purpose for the challenged act or omission.  (*Lucas*, at p. 437.)

       1.  <u>Defendant Cannot Establish That His Counsel's Performance Was Deficient</u>

       Our past decisions establish that, if the record does not explain why counsel acted, or failed to act, in the manner challenged, a reviewing court must reject the ineffective assistance claim on appeal, unless counsel was asked for and did not provide an explanation, or unless there simply could be no satisfactory explanation.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 (*Mendoza Tello*); *People v. Wilson* (1992) 3 Cal.4th 926, 936 (*Wilson*).)  "[I]n general, it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a tactical basis for a defense attorney's

course of conduct when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions . . . ." (*Wilson*, at p. 936.)**6**

Here, the record sheds no light on why defense counsel referred to the victim's gang affiliations or why he failed to object to the probation report's gang references, and there is no indication he was asked for an explanation. In view of the silence of the record, we cannot presume he was ineffective. (*Mendoza Tello, supra*, 15 Cal.4th at p. 266.) Rather, we must reject the claim on appeal. (*Wilson*, *supra*, 3 Cal.4th at p. 936 [An IAC claim "must be rejected" when the record on appeal sheds no light on counsel's actions.]; see *Mendoza Tello*, at p. 266.)

2. Defendant Has Not Established Prejudice

Even if counsel's performance was deficient, defendant has not established how counsel's alleged errors prejudiced him. Defendant contends that counsel's reference to the victim's gang affiliations "opened the door" for the prosecutor to respond by noting that defendant "was a decorated gang member" and making other gang references. Defendant claims the prosecutor's gang references "could not otherwise have occurred." It is unclear why defendant believes the prosecutor's gang references could not have occurred if defense counsel had not first said the victim had gang affiliations.**7** In any

---

**6** We note defendant does speculate that his counsel "had a tactical purpose for alluding to the victim's 'gang' ties, which was to imply that the victim was violent or dangerous . . . ." He then argues that this was not a *reasonable* tactical choice, since it "opened the door to" the prosecutor's gang-related argument.

**7** Defendant provides no reasoned argument or authority on the issue. Even where there is no gang enhancement, evidence of gang membership is often relevant to

*[footnote continued on next page]*

event, there is nothing in the record that would permit us to find that, but for defense counsel saying the victim had gang affiliations and failing to object to gang references in the probation report, there is a reasonable probability that defendant would have obtained a more favorable result.  The court expressly stated the reasons for declining to strike the firearm enhancement, as follows:  (1) defendant intentionally used a shotgun to murder an unarmed victim; (2) he had a lengthy criminal history comprised of a "total of eight prior felony convictions"; (3) he was "on a grant of both probation and parole at the time of the present offense"; (4) there were no circumstances in mitigation, as outlined in the presentencing investigation report; (5) none of the mitigating factors in section 1385, subdivision (c)(2), applied; and (6) it would endanger public safety if the enhancement was stricken, based on defendant's current conduct and significant criminal history.

In other words, in declining to strike the section 12022.53, subdivision (d) firearm enhancement, the trial court never mentioned defendant's gang association.  Given the court's detailed statement of its reasons, defendant cannot establish the reasonable

---

prove motive and/or identity.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049).  Here, the prosecutor used the gang evidence to provide the context for why a littering case resulted in murder and to allow the sentencing court to consider the prosecutor's explanation of the reason for defendant's actions in exercising its discretion.  Nevertheless, the sentencing court made no reference to considering any gang affiliations.

Defendant also claims "the [c]ourt and the prosecutor would have followed the law as amended by AB 333, and thus . . . the court would not have assumed that 'gang' allegations were *proven* and the prosecutor would not have argued that the gang allegations were necessarily *shown beyond a reasonable doubt to be true* where the prosecution had chosen not to attempt to prove those allegations."  It is unclear what defendant means, since Assembly Bill 333, among other things, changed the requirement to prove "a pattern of criminal gang activity" needed to establish a criminal street gang, within the meaning of section 186.22.  (*People v. Lopez* (2021) 73 Cal.App.5th 327, 345.)

10

probability of a better outcome if counsel had never mentioned the victim's gang affiliations or objected to the gang references in the probation report.

We conclude that defendant has failed to establish his counsel was ineffective. Therefore, no reversal is required.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS

J.

We concur:


RAMIREZ

    P.J.


McKINSTER

    J.

11